UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

DULCINIA P.

  Plaintiff,

v.              Civ. No. 24-658 KWR/GJF

FRANK BISIGNANO, *Commissioner*
*of the Social Security Administration*,[1]

  Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON PLAINTIFF'S MOTION TO REVERSE AND REMAND

  THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand [ECF 15] ("Motion"), dated October 25, 2024, challenging the determination of the Commissioner of the Social Security Administration ("the Commissioner") that she is not entitled to disability insurance benefits or supplemental security income under Title II or Title XVI of the Social Security Act, respectively. The Motion is fully briefed. *See* ECFs 19; 22. The Court has thoroughly reviewed the administrative record, the parties' briefs, and the relevant law, and for the reasons set forth below, recommends that Plaintiff's Motion be **DENIED** and the case dismissed with prejudice.[2]

## I. BACKGROUND

  This is Plaintiff's third appeal to this Court following the denial of disability claims. She is now a 50-year-old woman, having completed high school and some college and with past relevant work as a pharmacy technician. Administrative Record ("AR") at 1439–40, 2399. She filed an application for disability insurance benefits ("DIB") on January 20, 2016, alleging a disability

---

[1] Commissioner Bisignano was appointed as Commissioner of the Social Security Administration on May 7, 2025; thus, pursuant to Federal Rule of Civil Procedure 25(d), he is "automatically substituted as a party."

[2] The Court files this Proposed Findings and Recommended Disposition ("PFRD") pursuant to the presiding judge's June 28, 2024 Order of Reference. ECF 9.

onset of October 1, 2015, due to major depressive disorder, post-traumatic stress disorder ("PTSD"), insomnia, anxiety disorder, fibromyalgia, peroneal tendonitis, shoulder joint pain, and ankle pain. AR at 102–03, 219–20, 251. She was later diagnosed with and treated for additional impairments, including peripheral neuropathy, somatic symptom disorder, and degenerative disc disease of the cervical and lumbar spine. AR 2379, 2383–87, 2397-2401. She also has a history of obesity. AR 2379, 2386–87.

After ALJ Lilian Richter denied her initial DIB claim on December 2, 2018, Plaintiff appealed to this Court. *See* AR 1165–77. Judge Garza reversed and remanded in March 2020, finding that the ALJ erred in evaluating her treating therapist's opinion. *Id*.

Plaintiff's initial DIB claim was then consolidated with her subsequent claims for DIB and for supplemental security income ("SSI"). *See* AR at 983–84, 1180. After a second hearing on these consolidated claims, ALJ Richter again denied Plaintiff's disability claims on December 17, 2021. *See* AR 980–1007. Once again, Plaintiff appealed to this Court. *See* 2459. In this second appeal, the Commissioner stipulated to remand for further proceedings, which Judge Ritter ordered in July 2022. *See* AR at 2459, 2461–65.

Following a third hearing and third unfavorable decision on April 17, 2024 [AR 2376–2401], ALJ Fellabaum's decision became the final decision of the Commissioner, because the Appeals Council did not assume jurisdiction. *See* 20 C.F.R. § 404.984. Plaintiff appealed to this Court for a third time. ECF 1.

## II.  STANDARD OF REVIEW

### A.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). To evaluate claims for benefits, the SSA uses a five-step sequential evaluation process. *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003). The first four steps require the claimant to show that (1) she is not "presently engaged in substantial gainful activity," (2) "[she] has a medically severe impairment or combination of impairments," and either (3) the impairment is equivalent to a listed impairment or (4) "the impairment or combination of impairments prevents [her] from performing [her] past work." *Williams v. Bowen*, 844 F.2d 748, 750–51, 751 n.2 (10th Cir. 1988); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant bears the burden at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Grogan*, 399 F.3d at 1261; *Williams*, 844 F.2d at 750–51, 751 n.2. If the claimant reaches step five, however, the burden shifts to the Commissioner to show that the claimant retains sufficient capacity "to perform other work in the national economy in view of [her] age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.

### B.  Substantial Evidence

Judicial review of the ALJ's five-step analysis and ultimate decision is both legal and factual. *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence."). If the ALJ applied the correct legal standards and supported her findings with substantial evidence, the Commissioner's decision stands. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

In determining whether the ALJ applied the correct legal standards, the Court evaluates whether the ALJ "followed the specific rules of law" required for "weighing particular types of

evidence in disability cases[.]" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse or remand if the ALJ failed to "apply correct legal standards" or "show . . . [she] has done so[.]" *Hamlin*, 365 F.3d at 1214.

The Commissioner's factual findings, on the other hand, are presumed conclusive so long as substantial evidence supports them. 42 U.S.C. § 405(g). This standard requires "look[ing] to an existing administrative record and ask[ing] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (quotation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

Under this substantial evidence standard, a court cannot convert its meticulous review of the full record into "reweigh[ing of] the evidence nor substitut[ing] [the court's] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quotation omitted); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the *sufficiency* of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quotation omitted). Consequently, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quotation and brackets omitted).

## III.  PLAINTIFF'S CONTENTIONS

Plaintiff contends that she is entitled to remand for four primary reasons: (1) the ALJ erred by failing to follow the U.S. District Court mandate and subsequent order of the Appeals Council with respect to her consideration of PA Heather Dountas's opinions [ECF 15 at 6–12; ECF 22 at 1–5]; (2) the ALJ improperly picked and chose among the limitations found by the agency's non-examining psychologist, Lynette Causey, Ph.D [ECF 15 at 12–14; ECF 22 at 5–8]; (3) the ALJ failed to properly weigh the opinion of consultative psychologist Michael P. Emery, Ph.D [ECF 15 at 15–21; ECF 22 at 8–10]; and (4) the residual functional capacity assessments are not based on substantial evidence because the ALJ impermissibly excluded Plaintiff's complaints of fibromyalgia, back pain, neuropathy, and somatic system disorder from her subjective allegations analysis [ECF 15 at 21–27; ECF 22 at 10–12].

## IV.  ALJ'S DECISION AND FINDINGS

### A.  Steps One Through Three

At step one of the sequential evaluation process, the ALJ found that Plaintiff "ha[d] not engaged in substantial gainful activity since October 1, 2015, the alleged onset date." AR at 2379 (citing 20 C.F.R. §§ 404.1571, 416.971). At step two, she found that Plaintiff had the following severe impairments:

> fibromyalgia, left ankle peroneal tendinitis, bilateral hallux valgus with bunions, obesity, peripheral neuropathy, anxiety, depression, post-traumatic stress disorder (PTSD), psychotic disorder, and somatic symptom disorder. She also has bilateral hip degenerative joint disease since June 2018, degenerative disc disease of the cervical spine since October 2019, degenerative disc disease of the lumbar spine since December 2020, degenerative joint disease and meniscal tear of the right knee since January 2021, right hearing loss since July 2022, and plantar fasciitis since September 2023.

*Id*. (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)) (internal citations omitted). In addition, the ALJ acknowledged that Plaintiff had various non-severe impairments, including temporomandibular

joint arthralgia, insomnia, obstructive sleep apnea, gastroesophageal reflux disease, small bowel bacterial overgrowth syndrome, constipation, internal hemorrhoids, diaphragmatic hernia, polycystic ovary syndrome, occipital neuralgia, rosacea, restless leg, tachycardia, Raynaud's disease, hepatic steatosis, and headaches. *Id*.

The ALJ concluded at step three that none of these impairments, individually or collectively, matched the severity of the "listed impairments." AR at 2381 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

## B. Steps Four and Five

At step four, the ALJ found that Plaintiff's statements concerning the severity of her symptoms "[were] not entirely consistent with the . . . evidence" in the record. AR at 2386. The ALJ devoted more than 16 single-spaced pages to discussing the evidence of record. *See* AR at 2383–99. She extensively discussed Plaintiff's subjective symptom evidence, the prior administrative findings of non-examining consultants, and the medical opinions and evidence from treating and consultative examining providers. *See id*.

Based on her examination of that evidence, the ALJ made two residual functional capacity ("RFC") assessments. First, for the period between October 2015 and September 2019, the ALJ found that Plaintiff had the RFC to perform a reduced range of light work with the following limitations:

> [S]he could occasionally climb ramps and stairs, crouch and crawl. She could never climb ladders, ropes or scaffolds, or be exposed to unprotected heights, hazardous machinery, or have concentrated exposure to environmental irritants or extreme cold. She could not operate a motor vehicle for commercial purposes; she could occasionally use bilateral foot controls; she can perform simple, routine tasks, with no fast paced assembly line work; she could make simple work decisions. Her work should be performed in the same location every day. She could occasionally interact with co-workers, supervisors and the general public, with no customer service work.

AR at 2383. Second, the ALJ found that Plaintiff had the same RFC, except with additional manipulative limitations for reaching and handling beginning in October 2019, as well as an additional noise level limitation beginning in July 2022. AR at 2396–97 ("She can occasionally reach overhead and frequently reach in other directions with the left dominant upper extremity. She can frequently handle with the left dominant upper extremity. She can frequently reach in all directions with the right non-dominant upper extremity. . . . As of July 2022, the noise level of the work environment should be moderate or less.").

The ALJ determined that Plaintiff could not perform her past relevant work under either RFC. AR at 2399. Nevertheless, she found at step five that Plaintiff could perform three representative jobs: coin machine collector, collator operator, and marker. AR at 2400. Consequently, the ALJ found Plaintiff not disabled within the meaning of the Social Security Act. AR at 2401.

## V.   DISCUSSION

### A.   The ALJ did not err by failing to follow the U.S. District Court mandate or the subsequent order of the Appeals Council or by improperly weighing the opinions of PA Heather Dountas.

Plaintiff alleges that by deviating from Judge Ritter's July 23, 2022 remand order and the Appeals Council's October 11, 2022 Order Remanding Case to Administrative Law Judge, the ALJ committed reversible legal error. ECF 15 at 7 (citing *Sullivan v. Hudson*, 490 U.S. 877, 886 (1996)). Notably, Judge Ritter's remand order did not address the merits of Plaintiff's appeal but merely granted the Commissioner's Unopposed Motion to Reverse and Remand Pursuant to Sentence Four. AR at 2459–60. The Appeals Council's remand order, in contrast, concluded that ALJ Lilian Richter's 2021 "hearing decision [did] not contain an adequate evaluation of the opinions from Heather Dountas, PA-C[,]" Plaintiff's primary care provider. AR at 2463.

7

According to the Appeals Council, ALJ Richter provided inadequate explanation for affording "little weight" to PA Dountas's opinions. *Id*. First, the Council noted that the ALJ discounted PA Dountas's opinions as primarily based on Plaintiff's subjective reports even though some of her opinions were based on observations and physical examinations of Plaintiff. *Id*. In addition, the Council found that ALJ Richter failed to explain how Plaintiff's activities of daily living were inconsistent with PA Dountas's opinions. AR at 2464. Finally, the Council found treatment notes documenting generally normal physical findings, including normal gait and unassisted ambulation, to be a relevant consideration but insufficient basis for giving PA Dountas's opinions little weight. *Id*. For all these reasons, the Appeals Council instructed the ALJ to give further consideration to PA Dountas's opinions pursuant to 20 C.F.R. §§ 404.1527 and 416.927, and to explain the weight given to those opinions. *Id*.

Plaintiff contends that ALJ Fellabaum committed the same errors as ALJ Richter and in doing so failed to comply with the Appeals Council's directive to further consider PA Dountas's opinions. ECF 15 at 11–12 (citing AR 1003–04, 2389–96). Plaintiff couches the alleged inadequacies in ALJ Fellabaum's decision as deviations from a remand order that are themselves legal error. *Id*. at 7 (citing *Sullivan v. Hudson*, 490 U.S. 877, 886 (1996)). But as the Commissioner points out, neither the posture of this case nor its previous remands alter the standard under which the Court reviews Plaintiff's claims. ECF 19 at 8 (citing 20 C.F.R. § 404.977(b)). Under that standard, an alleged deviation from an Appeals Council's remand order is only material if the "ALJ meaningfully failed to apply the correct legal standards, or the denial of benefits is unsupported by substantial evidence." *See Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1174 (10th Cir. 2020).

Both sides agree that because Plaintiff's initial claim was filed before March 27, 2017, the ALJ's analysis of PA Dountas's opinions is governed by 20 C.F.R. §§ 404.1527 and 416.927.[3] *See* ECF 15 at 10; ECF 19 at 8. Under those regulations, the ALJ was required to consider PA Dountas's opinions using six factors: (1) the examining relationship, if any, between the medical source and the claimant; (2) the treatment relationship, if any, including its nature, length, and extent and the frequency of examination; (3) supportability, or the degree to which the medical source presents and explains evidence to support a medical opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist and is about an issue related to the medical source's specialty; and (6) other factors that are brought to the ALJ's attention. 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6). Notably, the ALJ was not required to "address each factor expressly or at length." *Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. Cir. 2012) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)).

In addition to considering PA Dountas's opinions using the enumerated factors, the ALJ was also required to explain the weight given to those opinions.[4] *See* 20 C.F.R. §§ 404.1527(c), (f), 416.927(c), (f); SSR 06-3p, 2006 WL 2329939, at *1–5. In so doing, she was required to explain not only the evidence supporting her decision but also the significantly probative or uncontroverted evidence on which she did not rely. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996); *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009).

---

[3] On March 27, 2017, new Social Security regulations went into effect that abolished the "treating physician" rule and rescinded several rulings. 82 Fed. Reg. 5844–84 (Jan. 18, 2017) (effective date March 27, 2017). Because the new regulations now found at 20 C.F.R. §§ 1520c and 416.920c are prospective, however, and because Plaintiff filed her disability claims before March 27, 2017, they do not apply here.

[4] Although PA Dountas is characterized as a "non-acceptable medical source" under the applicable regulations, the same factors apply to the ALJ's consideration of her opinions. *See* 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 06-3p, 2006 WL 2329939, at *4–5.

ALJ Fellabaum offered various reasons for assigning "little" or "limited" weight to PA Doutnas's opinions,[5] which span 2016 to 2023, including because they were inconsistent with medical evidence, unsupported, and vague. AR at 2389–96. But rather than weighing PA Dountas's opinions collectively, she independently discussed each opinion, the weight she assigned to that opinion, and the reasons therefor:

- With respect to PA Dountas's June 20, 2016 opinion, the ALJ explained that she gave only "partial weight" to the assessed limitations because standing and walking for less than two hours in workday and needing to alternate positions were "not consistent with the medical evidence and not adequately supported by Ms. Dountas." AR at 2389. In support, the ALJ explained that "several [treatment] notes show that [Plaintiff] ambulates unassisted . . . with normal gait, strength, sensation, and coordination." AR at 2389–90. In contrast, the ALJ concluded that the moderate limitations PA Dountas assessed in attention and concentration, pace, and making simple decisions were "consistent with the record and [Plaintiff's] history of depression, anxiety, and PTSD, as well as with Dr. Emery's examination." AR at 2390.

- The ALJ gave "limited weight" to PA Dountas's April 12, 2016 opinion that Plaintiff was no longer able to work in a normal capacity due to overwhelming pain and fatigue and the sedating effect of her pain medications. AR at 2390 (citing AR at 541). Although the ALJ acknowledged that Plaintiff's physical impairments cause *some* limitations, she noted that PA Dountas had not specified the extent of Plaintiff's limitations nor described how her pain and fatigue would impact specific functional activities. *Id*.

- The ALJ gave Dountas's May 21, 2018 opinion "limited weight." AR at 2390–91 (citing AR at 973). She noted that PA Dountas assessed more significant limitations than she had in June 2016 without explaining why she had done so. AR at 2391. As before, ALJ Fellabaum described PA Dountas's finding of a standing and walking limitation as inconsistent with treatment notes showing that Plaintiff ambulates unassisted and has normal gait (except some reduced range of motion in her left ankle), strength, sensation, and coordination. *Id*. (citations omitted). As to mental limitations, the ALJ concluded that the marked limitations PA Dountas assessed were "not consistent with notes showing [Plaintiff was] alert and oriented [with] normal memory, attention, and concentration. *Id*. According to the ALJ, "[t]here [was] nothing noted in [PA Dountas's] opinion or [Plaintiff's] mental health treatment that explains or supports the increased mental limitations" that PA Dountas assessed. *Id*.

- The ALJ again gave "little weight" to PA Dountas's November 20, 2020 opinion, observing that PA Dountas's "physical opinion[s] [were] based on subjective questioning

---

[5] In contrast to the bulk of PA Dountas's opinions, which the ALJ rejected, the ALJ gave "partial weight" to PA Dountas's opinion that Plaintiff had *moderate* limitations in her ability to concentrate and to make simple decisions, finding these opinions consistent with Plaintiff's mental health history and examination findings. AR at 2390.

of [Plaintiff] and some abnormal findings on physical examination." AR at 2392 (citing AR at 1691 (noting that the limitations were derived from "subjective questioning" of Plaintiff because PA Dountas "do[esn't] do functional capacity testing")). Once again, the ALJ concluded that clinical observations that Plaintiff could ambulate unassisted and had normal gait, sensation, strength, and coordination were inconsistent with PA Dountas's assessed limitations of standing and walking for less than two hours in a workday. AR at 2392. With respect to the marked mental limitations that PA Dountas assessed, the ALJ observed that Plaintiff was described as "alert, oriented, pleasant, and cooperative," several times with "adequate fund of knowledge, and intact or appropriate memory, attention, and concentration." *Id*.

- The ALJ determined that PA Dountas's August 18, 2021 opinion "deserves little weight." AR at 2393 (citing AR at 2356). She explained that "[d]espite stating that [the assessed] limitations existed since October 2015, Ms. Dountas fail[ed] to explain how and why her opinions have varied regarding [Plaintiff's] physical and mental limitations over time, as she assessed them in multiple prior opinions." *Id*. Although the ALJ considered the assessed ability to lift and carry 20 pounds occasionally and 10 pounds frequently to be "consistent with the overall record showing normal gait, strength, sensation, reflexes and coordination," she found "little to no evidence consistent with significant manipulative limits." *Id*. Once again, the ALJ characterized the assessed marked mental limitations as inconsistent with "clinical observations throughout the record regarding [Plaintiff's] mood, affect, attitude, fund of knowledge, awareness and orientation, [and] attention and concentration." *Id*.

- The ALJ again assigned "little weight" to PA Dountas's August 14, 2023 opinion. AR at 2393 (citing AR at 3035). She noted that PA Dountas assessed a limitation of lifting and carrying only five pounds occasionally while describing this as Plaintiff's "baseline" since 2015. *Id*. To the contrary, the ALJ observed that PA Dountas's 2023 lifting and carrying limitations were inconsistent with many of her previous assessments and yet she provided "no support for or explanation of why she ha[d] changed her opinions over time."[6] *Id*. The ALJ described PA Dountas's notations that various assessed limitations were "baseline since 2015" as "general and vague explanation[s] without reference to any specific clinical findings." AR at 2394. As for PA Dountas's assessed limitations regarding overhead reaching, the ALJ concluded that Plaintiff had no significant medically determinable shoulder impairment and that a limitation to reaching overhead less than occasionally was not "entirely consistent" with the record. *Id*.

- Finally, the ALJ determined that PA Dountas's March 18, 2024 letter to the ALJ "deserve[d] little weight." AR at 2396 (citing AR at 3267). The ALJ explained that while some effect on concentration, completing tasks, and socializing was expected due to Plaintiff's fibromyalgia and major depressive disorder, PA Dountas opinions—that fibromyalgia "affects" her concentration and task completion and that depression "affects"

---

[6] The ALJ detailed the variation in PA Dountas's assessments of Plaintiff's ability to lift and carry: less than 20 pounds even occasionally in June 2016, less than 10 pounds occasionally and less than five pounds frequently in May 2018, 10 pounds occasionally in November 2020, 20 pounds occasionally and 10 pounds frequently in August 2021, and five pounds occasionally and less than five pounds frequently in August 2023. AR at 2394.

her ability to socialize, eat properly, exercise, and sleep—were "vague and too general," rendering them "not useful." *Id.*

Following her discussion of each of PA Dountas's opinions, the ALJ summarized her reasons for discounting them:

> None of [her opinions] contain a summary of clinical findings pointing to specific deficits or limitations of range of motion, strength, gait, station, coordination, sensation, or reflexes. The opinions also do not provide any explanation of why her opinions changed over time and what supports those changes. Although the evidence demonstrates that [Plaintiff] had later onset impairments that result in additional limitations, none of Ms. Dountas's opinions explain why [she] would assess *fewer* limitations on [Plaintiff's] functional abilities after she has additional impairments and limitations.

AR at 2394 (emphasis added).

The ALJ's methodical explanation of why she discounted PA Dountas's various opinions suggests that she considered the applicable factors and supported her findings with substantial evidence. It also permits the Court to follow her reasoning.

Even so, because ALJ Fellabaum relied in part on instances of unassisted ambulation and of normal gait, strength, sensation and coordination in weighing PA Dountas's opinions, Plaintiff contends that she failed to heed the Appeals Council's direction to provide adequate reasons for the weight she assigned to those opinions. ECF 15 at 8; *see also* AR at 2464 (Appeals Council concluding that treatment notes showing normal gait, unassisted ambulation, and the lack of abnormal physical findings were "not a sufficient basis to give little weight to PA-C Dountas' opinion"). But even the Appeals Council acknowledged that these types of physical findings are "relevant" to the weight assigned to a medical source's opinions. AR at 2464. Based on the Court's construction of the Appeal Council's remand order, ALJ Fellabaum was directed not to rely on normal physical examination findings *alone* as a basis for rejecting PA Dountas's opinions, particularly because Plaintiff suffered from a severe impairment of fibromyalgia. *See id.* As shown

in the Court's discussion of the ALJ's analysis of PA Dountas's various opinions above, inconsistency with physical examination findings or observations was far from the *only* reason the ALJ offered for discounting PA Dountas's opinions. *See* AR at 2389–96.

Relatedly, Plaintiff invokes SSR 12-2p in support of her position that physical examination findings, such as the ones to which the ALJ referred, are "not determinative of fibromyalgia pain and symptoms." ECF 15 at 11. As the Commissioner points out, SSR 12-2p does not define what a claimant must show to demonstrate *disability* due to fibromyalgia. ECF 19 at 11. Rather, it describes the parameters for establishing fibromyalgia as a medically determinable impairment at step two of the sequential evaluation process. *See* SSR 12-2p, 2012 WL 3104869, at *2–5. According to SSR 12-2p, when assessing an RFC for a person with a medically determinable impairment of fibromyalgia, which the ALJ found Plaintiff to have, the ALJ considers the longitudinal medical records and the objective medical evidence therein in assessing Plaintiff's RFC. *Id*. at *6. The Tenth Circuit's reasoning in *Trujillo v. Commissioner*, *SSA*, 818 F. App'x 835 (10th Cir. 2020) is instructive:

> [H]aving a pain-producing impairment does not necessarily mean a person is disabled. "[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986) (quotation omitted). Accordingly, SSR 12-2p distinguishes between a fibromyalgia diagnosis and a finding that a person with that diagnosis is disabled. *See* SSR 12-2p, 2012 WL 3104869, at *5. And it notes that an ALJ "must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." *Id*. at *2. SSR 12-2p also stresses the importance of considering the claimant's longitudinal record in assessing the existence, severity, and disabling effects of fibromyalgia. *See id*. at *3, *5 (noting that fibromyalgia symptoms "may vary in severity over time"), *6. We therefore reject Trujillo's perfunctory assertion that it was "improper" for the ALJ to rely on objective medical evidence in the longitudinal record.

818 F. App'x at 844. As in *Trujillo*, it was not improper, despite Plaintiff's fibromyalgia, for the ALJ to rely on objective medical evidence in her step-four analysis or in determining that Plaintiff was not disabled.

Next, Plaintiff contends that the ALJ was "fixat[ed]" on PA Dountas's increasingly more limited opinions when there was a straightforward explanation that did not warrant discounting those opinions: Plaintiff's condition was worsening over time. ECF 15 at 8–9. The Commissioner counters, insisting that PA Dountas's opinions did *not* demonstrate a pattern of progressively worsening functioning but, instead, a lack of internal consistency in PA Dountas's assessed limitations. ECF 19 at 12. By way of example, the Commissioner observes that PA Dountas assessed limitations on lifting and carrying that vacillated between ten pounds in 2020, twenty pounds occasionally (and ten pounds frequently) in 2021, and five pounds occasionally (and less than five pounds frequently) in 2023, while at the same time describing the 2023 five-pounds-occasionally limitation as Plaintiff's "baseline" for lifting and carrying limitations "since 2015." *Id*. at 12 (citing AR at 532–34, 1691–93, 2356–57, 2394, 3035–36). The ALJ made the same observation, and she included it among the reasons for discounting the weight she afforded PA Dountas's opinions. *See* AR at 2394. Absent any explanation for the variations in assessed limitations, these inconsistencies constitute a reasonable basis for discounting PA Dountas's opinions, *see* 20 C.F.R. § 404.1527(c)(3)–(4), and one the Court can easily follow.

Acknowledging that the ALJ explicitly addressed consistency between PA Dountas's opinions and other medical evidence of record, Plaintiff contends that the ALJ failed to consider *other* factors set forth in 20 C.F.R. §§ 404.1527 and 416.927. ECF 15 at 10. First, she faults the ALJ for failing to consider how PA Dountas's long-term treatment relationship informed her opinions concerning Plaintiff's functioning. *Id*. But the ALJ *did* note that Plaintiff had been under

14

PA Dountas's care "since 2008," and, as explained above, she separately and extensively discussed each of PA Dountas's opinions from 2016, 2018, 2020, 2021, 2023, and 2024. *See* AR at 2389–96. Together, her reference to the duration of treatment and her independent discussion of each of PA Dountas's opinions show that she was cognizant of the long-term treatment relationship but nevertheless determined that not all of PA Dountas's opinions were supported or consistent with other medical evidence of record. *See id*. Nothing more was required of the ALJ in terms of her express consideration of Plaintiff's treatment relationship with PA Dountas. *See Mounts*, 479 F. App'x at 866.

Plaintiff also contends that the ALJ failed to consider how the "explanatory material" that PA Dountas provided in conjunction with her opinions "factored into the 'supportability' analysis." ECF 15 at 10 n.7 (citing AR at 541 (reporting that, in April 2016, Plaintiff had "diffuse pain and fatigue" and her "pain medication [is] often sedating and can affect her concentration"); AR at 3038 (reporting that, in August 2023, Plaintiff suffered from fibromyalgia, chronic fatigue, and depression and was unable to get restorative sleep, had pain that was difficult to control, weight that fluctuated, and depression that affected her concentration and focus)).

But again, the ALJ did not omit the discussion Plaintiff accuses her of omitting. Instead, she *considered* and *discussed* both items of "explanatory material" to which Plaintiff refers. *See* AR at 2390 (observing that PA Dountas opined that Plaintiff's pain medications "are sedating and can affect concentration" but giving her opinions little weight because they failed to specify the extent of the limitations or how Plaintiff's pain and fatigue would impact specific functional activities"); AR at 2393 (acknowledging that PA Dountas opined that Plaintiff was unable to get restorative sleep or to control her pain or her weight, and that her depression affected her concentration and focus). Indeed, the ALJ appears to have found this "explanatory material" to

support PA Dountas's 2016 opinion that Plaintiff had *moderate* limitations in attention and concentration, pace, and making simple decisions, having noted that such limitations were consistent with the record and with Plaintiff's history of depression, anxiety, and PTSD. *See* AR at 2390. That the ALJ did not consider the broad statements contained in the "explanatory materials" to support PA Dountas's assessed *marked* limitations does not undermine the ALJ's weighing of those opinions. The Court finds no error in the ALJ's consideration of the so-called "explanatory material."[7]

And this is not all ALJ Fellabaum had to say about the supportability of PA Dountas's opinions. She also noted that PA Dountas attributed some of her assessed limitations to Plaintiff's subjective reports, which the ALJ found not entirely consistent with other evidence of record. AR at 2386, 2392 (citing AR 1691 (lifting and carrying limitations based on "subjective questioning – I don't do functional capacity testing"); *see also* AR 532 (responding to "What are the medical finding[s] supporting this opinion?" with "History from patient"); AR at 533 (noting that Plaintiff is "claiming she can no longer perform normal work activity"); AR at 2356 (noting that the assessed lifting and carrying limitations are "based on history [with] pt"). In another instance, the ALJ found that PA Dountas failed to support her opinions with information concerning the extent

---

[7] For the first time in her reply brief, Plaintiff complains that the ALJ likewise failed to consider how PA Dountas's fibromyalgia assessments supported her opinions. ECF 22 at 3 (citing AR at 538, 1693, 3037–38). Not only is an "argument insufficiently raised in a party's opening brief . . . deemed waived," *SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1226 (10th Cir. 2009), Plaintiff's argument is otherwise unavailing. The ALJ discussed many of the fibromyalgia symptoms and effects noted in PA Dountas's fibromyalgia assessments when she characterized that condition as a severe impairment and accounted for Plaintiff's "chronic pain," "low energy," and "poor stamina" in her RFC assessment. *Compare* AR at 538, 1693, 3037–38, *with* AR at 2392 (considering PA Dountas's opinion that Plaintiff has "poor stamina due to chronic pain and fatigue" and concluding that "fibromyalgia and poor stamina . . . affect[] her ability to interact with others, understand and use information, and maintain a consistent pace in a work setting"); AR at 2395 (observing that "[t]he overall record supports limitations with information, social interaction, concentration and persistence at work-related tasks, and managing daily activities due to a combination of depression, anxiety, PTSD, chronic pain, and fibromyalgia"); AR at 2396 (explaining that pain, poor stamina, and sleep disturbances are consistent with Plaintiff's diagnoses and acknowledging that they affect her concentration and task completion).

of Plaintiff's limitations or how her limitations would impact specific functional activities. *See* AR at 2390 (citing AR at 541). And the ALJ also indicated that PA Dountas failed to explain "why her opinions changed over time and what supports those changes." AR at 2394. In so concluding, the ALJ emphasized that PA Dountas described her August 2023 opinions (which amounted to less than sedentary work[8]) as Plaintiff's "baseline since 2015" [AR at 2393], even though her earlier opinions, particularly those in 2016 and 2021, assessed greater abilities in lifting, carrying, standing, and walking.[9] *Compare* AR at 3035, *with* AR at 532, 536, 2356. In sum, the ALJ offered good reasons for the weight she assigned to PA Dountas's opinions and her findings are supported by substantial evidence.

Turning to PA Dountas's Medical Assessments of Ability to Do Work-Related Activities (Non-Physical) [*see, e.g.*, AR at 974, 2357, 3036], Plaintiff suggests that the ALJ erred when she mischaracterized the assessed limitations therein as "mental" opinions, insisting they were instead related to Plaintiff's pain and fatigue. ECF 15 at 11. Plaintiff argues that "the ALJ's rationale in minimizing these opinions based on mental health symptoms does not withstand scrutiny." *Id*. In response, the Commissioner contends that "[t]he opinions Plaintiff refers to are very much related to mental functioning—namely, her ability to maintain attention and concentration, perform activities within a schedule, sustain an ordinary routine, and complete a normal workday and workweek." ECF 19 at 13 (citing AR at 974, 2357, 3036).

To the extent Plaintiff suggests the ALJ committed reversible error by recognizing the mental components of the limitations assessed in PA Dountas's Medical Assessment of Ability to

---

[8] "Sedentary work involves lifting no more than 10 pounds at a time . . . . [and] walking and standing . . . occasionally." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[9] For instance, in 2016, PA Dountas assessed limitations in lifting and carrying of less than 20 pounds and standing and working at least 2 hours per workday [AR at 532, 536] and, similarly, in 2021, she assessed lifting and carrying limitations of 20 pounds occasionally and standing and walking for 2 hours per workday [AR at 2356].

Do Work-Related Activities (Non-Physical), the Court is unpersuaded. *Compare* AR at 2357 (assessing the "non-physical" abilities to maintain concentration and attention, to maintain regular attendance and punctuality, and to complete a normal workday and workweek while performing at a consistent pace), *with* POMS DI § 25020.010(B)(2)(a) (recognizing that these same abilities are "*mental* abilities needed for any job" (emphasis added)).  More to the point, the Court can follow the ALJ's reasoning when she concludes that marked limitations in maintaining attention and concentration, maintaining regular attendance and punctuality, and completing a normal workday and workweek while performing at a consistent pace are at odds with treatment notes which "show that even with her physical and mental limitations, [Plaintiff] is alert, oriented, pleasant and cooperative[,] . . . [has an] adequate fund of knowledge, and intact or appropriate memory, attention and concentration." *See* AR at 2392.

Having satisfied itself that the ALJ did not commit reversible error in her analysis of PA Dountas's opinions, the Court recommends that Plaintiff's motion be denied on this first ground.

### B. The ALJ did not err in weighing Dr. Causey's prior administrative findings or in accounting for the moderate limitations she assessed.

Next, Plaintiff argues that the ALJ improperly picked and chose from among the limitations found by the state agency psychologist, Lynette Causey, Ph.D. ECF 15 at 12–14. More specifically, she suggests that in giving partial weight to Dr. Causey's prior administrative findings, the ALJ failed to address, or to incorporate into Plaintiff's RFC, Dr. Causey's moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 13.

As relevant here, Dr. Causey evaluated the record in May 2016 and indicated in her Mental Residual Functional Capacity Assessment ("MRFCA") that Plaintiff was moderately limited in

areas of sustained concentration and persistence, to include the specific ability highlighted by Plaintiff. AR at 114. Then, in the narrative portion of the same MRFCA, Dr. Causey found that Plaintiff could "understand and remember short and simple instructions, locations, and work-like procedures," that she could "ask simple questions or request assistance," that she could "perform activities within a schedule, maintain regular attendance and make simple work-related decisions," and that she could perform "simple duties that can be learned on the job in a short period of time and involve things rather than people." AR at 115. Effectively, Dr. Causey determined that Plaintiff could perform unskilled work. S*ee also* 20 C.F.R. § 404.1568(a); 20 C.F.R. pt. 404, subpt. P., App., 2 § 202.00(g)). In October 2016, another state agency psychologist, Dr. Ellen Gara, evaluated the record and affirmed Dr. Causey's findings. AR at 130–32.

The ALJ considered Drs. Causey and Gara's prior administrative findings collectively, giving them partial weight. AR at 2387–88. In doing so, she determined that the psychologists' MRFCA narratives did not adequately address the moderate limitations they assessed in social functioning. AR at 2388. The ALJ explained that she accounted for those moderate limitations by limiting Plaintiff to occasional interactions and no customer service work. *Id*. Otherwise, the ALJ determined that the psychologists' findings were generally consistent with the medical evidence throughout the relevant period, including Plaintiff's March 2016 consultative psychological evaluation, in which Plaintiff exhibited "delayed recall and had difficulty with serial sevens" but performed "OK on a digit span test and showed good fund of knowledge." *Id*. (citing AR at 489–93).

Plaintiff's complaints related to Dr. Causey's prior administrative findings are two-fold. First, she contends that despite assessing a moderate limitation in her ability to complete a normal

workday and workweek,[10] Dr. Causey failed to explain "why she excluded limitations in keeping pace and requiring rest periods" in the narrative portion of her MRFCA. ECF 15 at 13. Second, Plaintiff contends that the ALJ compounded this error by failing to account in her RFCs for a moderate limitation in completing a normal workday and workweek. *Id*. In support, Plaintiff relies principally on a provision in the POMS that sets forth the mental abilities necessary for any job and on three decisions from judges in this District. *See id*. at 14 (citing POMS DI § 25020.010(B)(2)(a); *Vienna v. Saul*, No. 18-cv-783-LF, 2019 WL 4686718 (D.N.M. Sept. 26, 2019)); ECF 22 at 6–8 (citing *Romero v. Kijakazi*, No. 21-cv-249 KK, 2022 WL 1553295 (D.N.M. May 17, 2022); *Salazar v. Kijakazi*, No. 21-149 KK, 2022 WL 4365864 (D.N.M. Sept. 21, 2022)).

As to the narrow issue Plaintiff raises concerning an assessed moderate limitation in the ability to complete a normal workday and workweek, the undersigned's view diverges from those of Judges Fashing and Khalsa, on whose decisions Plaintiff relies. *See Bernadette S. v. Dudek*, No. 24-124 JB/GJF, 2025 WL 892944, at *5 (D.N.M. Mar. 24, 2025) (recognizing that "Magistrate Judge Fouratt holds . . . [that] by limiting the plaintiff to simple work and simple decisions, the ALJ [can] account[] for a moderate limitation in completing a workday and workweek," even if the state agency consultant's MRFCA narrative does not explicitly mention this limitation, whereas Judges Khalsa and Fashing hold otherwise). *Compare, e.g., Padilla v. Berryhill*, No. 17-329 GJF, 2018 WL 3830930, at *14–15 (D.N.M. Aug. 13, 2018) (holding that an RFC restricting a claimant to simple work and simple decision making reasonably accounted for a moderate limitation in completing a normal workday and workweek), *with Ortiz v. O'Malley*, No. 1:22-cv-00660-LF, 2024 WL 278290, at *7 (D.N.M. Jan. 25, 2024) (holding that an RFC limiting a

---

[10] The full ability for which Dr. Causey assessed a moderate limitation was in "complet[ing] a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR at 114. For the sake of simplicity, the Court refers to this ability hereinafter as "complet[ing] a normal workday and workweek."

claimant to simple, routine work did not account for a moderate limitation in the ability to complete a normal workday and workweek and explaining, "I do not find *Padilla* persuasive.").

Judge Browning of this District recently weighed in on this the intra-district split. After "review[ing] the issue carefully," he rejected the approach of Judges Fashing and Khalsa and concluded that "Magistrate Judge Fouratt's approach is correct." *Bernadette S.*, 2025 WL 892944, at *5. Like the undersigned, Judge Browning's analysis was guided by the Tenth Circuit's most recent published decision addressing the issue: *Smith v. Colvin*, 821 F.3d 1264, 1268–69 (10th Cir. 2016).

In *Smith*, the Tenth Circuit held that a non-examining physician's MRFCA narrative that limited the plaintiff to work "limited in complexity" adequately accounted for a moderate limitation in completing a normal workday and workweek. *Id.* at 1268–69. It followed, the court concluded, that the ALJ's RFC, which limited the plaintiff to only simple, repetitive, and routine tasks, likewise incorporated the same moderate limitation. *Id.*

Although Judge Browning perceived some conflict between the Tenth Circuit's decision in *Smith* and POMS DI § 25020.010(B)(3)(i), which provides that "[t]he ability to complete a normal workday and workweek" is a "mental abilit[y] needed for any job," he nevertheless found himself constrained to follow *Smith*. *Bernadette S.*, 2025 WL 892944, at *6. The undersigned finds itself likewise constrained and, accordingly, its resolution of the issue raised by Plaintiff favors the Commissioner. *See, e.g., Padilla*, 2018 WL 3830930, at *14–15; *Bernadette S. v. King*, No. 24-124 JB/GJF, 2025 WL 399735, at *9–10 (D.N.M. Feb. 5, 2025).

For his part, the Commissioner emphasizes that the Court's role is to compare the ALJ's RFCs to Dr. Causey's MRFCA *narrative* and not to the moderate limitations she assessed in Section I of her MFRCA. ECF 19 at 16. In support, he quotes from the Tenth Circuit's decision in

*Fannin v. Commissioner, SSA*, 857 F. App'x 445 (10th Cir. 2021), which in turn quoted from *Smith*: "[c]hallenges to whether the ALJ's assessment of residual functional capacity incorporate limitations in Section I ask 'the wrong question . . . We compare the [ALJ's] finding to [a state agency reviewer's conclusions] on residual functional capacity, not [her] notations of moderate limitations." ECF 19 at 16–17 (quoting *Fannin*, 857 F. App'x at 447–48 (quoting *Smith v. Colvin*, 821 F.3d at 1269 n.2)). The Commissioner observes that "an ALJ may incorporate a state agency psychologist's 'moderate' ratings into their RFC finding without repeating verbatim their descriptions of the claimant's limitations." ECF 19 at 17 (citing *Chavez v. Colvin*, 654 F. App'x 374, 375 (10th Cir. 2016)). Ultimately, the Commissioner insists that the ALJ adequately accounted for a moderate limitation in completing a normal workday and workweek when she limited Plaintiff—in both of her RFCs—to simple, routine tasks and work decisions, to no fast-paced assembly line work,[11] and to work that is performed in the same location every day. *Id*. The Court agrees.

In view of *Smith*, and consistent with its prior resolution of this issue, the Court concludes that the ALJ's RFCs adequately accounted for the moderate limitation that Dr. Causey assessed in completing a normal workday and workweek. The Court recommends that Plaintiff's motion be denied on this ground.

### C.  The ALJ properly weighed the opinion of consultative psychological examiner.

Plaintiff asserts that the ALJ failed to properly weigh the opinion of her consultative psychological examiner, Michael P. Emery, Ph.D. ECF 15 at 17–20. In Plaintiff's view, the record

---

[11] Plaintiff complains that the narrative portion of Dr. Causey's MRFCA omits any explanation as to "why she excluded limitations in keeping pace and requiring rest periods" even though she assessed a moderate limitation in "complet[ing] a normal workday and workweek without interruptions from psychologically based symptoms and [in] *perform[ing] at a consistent pace without an unreasonable number and length of rest periods*." ECF 15 at 13 (emphasis added). The Court notes that the ALJ's RFC is more restrictive in terms of pace than is Dr. Causey's MRFCA narrative. *Compare* AR at 2397, *with* AR at 115.

supports Dr. Emery's assessed marked limitations in social functioning and adaptation, and the ALJ erred in affording those opinions "little weight." *Id*.

Plaintiff attended a consultative psychological examination with Dr. Emery in March 2016. AR at 489–91. In the report generated after that examination, Dr. Emery discussed both normal and abnormal findings. *See id*. For instance, he reported that Plaintiff remembered two of three object names after a three-minute interval, made some errors with serial sevens, and miscalculated change. AR at 490. He observed that Plaintiff was oriented in all spheres, correctly spelled forward and backward, and showed a good fund of knowledge. AR 490–91. Dr. Emery also indicated that Plaintiff arrived on time, having driven herself to his office, was neatly dressed and groomed, and actively engaged in the interview. AR at 490. He described Plaintiff's narrative as articulately expressed, logical, linear, and pertinent, and he noted that her affect was full range and congruent with content. *Id*. At the same time, Dr. Emery documented Plaintiff's reports of depression, anxiety, pain, and fatigue from fibromyalgia, depression, and PTSD. AR at 489–91. He estimated that her intelligence was above average but opined that she met the criteria for PTSD and persisting depression reactive to fibromyalgia pain and the loss of a stillborn child. AR at 491. He concluded that Plaintiff's "[i]mpairments due to depression and PTSD are accumulative in addition to impairments due to fibromyalgia pain, which [he] defer[ed] to medicine, and [that] the two likely circularly exacerbate." *Id*. Although he found Plaintiff's cognitive abilities no more than mildly impaired, except when actively panicking, he found her social functioning and adaptation *markedly* impaired. *Id*. He noted Plaintiff's reports of being withdrawn from non-familial activities and of being generally homebound except when transporting her teenage children. *Id*.

As to supportability, the ALJ acknowledged that Dr. Emery "supported his opinion with citations to the examination." AR at 2389. Even so, she gave his opinion "limited weight" because

she found it to "overstate[]" Plaintiff's limitations in social functioning and adaptation and to "understate[]" her limitations with cognition and maintaining concentration and pace. *Id*. In the ALJ's view, Dr. Emery's assessed marked limitations in social functioning and adaptation were "not entirely consistent with the medical evidence showing a claimant who is alert, oriented, and cooperative" or with notes showing "normal or intact memory, attention, and concentration." *Id*.

In the context of her discussion of Dr. Causey's opinions, the ALJ further explained that Dr. Emery's findings support some limitations in Plaintiff's attention and concentration but only *moderate* limitations in social functioning, particularly given Plaintiff's ability to ask simple questions and request assistance. AR at 2388. The ALJ indicated that she therefore incorporated moderate limitations into the RFCs by limiting Plaintiff to occasional interactions and no customer service work. *Id*.

Relying principally on a decision by Judge Robbenhaar, Plaintiff faults the ALJ for failing to supply citations to the record to support her consistency analysis. ECF 15 at 17 (citing *Vargas v. Kijakazi*, Civ. No. 20-647 JFR, 2021 WL 5300070 (D.N.M. Nov. 15, 2021)). In *Vargas*, Judge Robbenhaar reasoned that "[w]hen the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion *with citations to specific medical facts and nonmedical evidence*, the court will conclude that his RFC assessment is not supported by substantial evidence." 2021 WL 5300070, at *7 (citing *Southard v. Barnhart*, 72 F. App'x 781, 784–85 (10th Cir. 2003)) (emphasis added). Because the ALJ did not provide specific citations to the record in the context of her consistency analysis, Plaintiff insists that her findings are not supported by substantial evidence. ECF 15 at 21.

It is true that despite *referring* to evidence that Plaintiff was alert, oriented, and cooperative with normal or intact memory, attention, and concentration, the ALJ failed to *cite to specific parts*

*of the record*, at least in the paragraphs she devoted to discussion of Dr. Emery's opinions. *See* AR at 2389. But elsewhere in her analysis of opinion evidence, the ALJ included *ample* citations to the record for these same findings:

> multiple notes show[] that the claimant is alert and oriented (1F/40, 56, 72; 11F/14; 12F/16; 13F/5; 20F/31, 62; 25F/22, 54; 26F/13, 19; 27F/2; 28F/3; 29F/12; 32F/13, 19, 28, 30, 51, 55; 33F/7, 15, 41, 74, 92; 40F/7, 11; 41F/17, 34; 43F/11, 19, 24; 44F/3) with ability to respond to questions (33F/92; 47F/94). Her insight and judgment appear intact or appropriate (11F/5, 8; 12F/5; 29F/4; 32F/5, 45; 47F/49). She is an accurate historian (38F/7). Some notes say that her cognitive abilities do not appear impaired (6F/2, 8, 14, 20, 28; 13F/4, 6; 37F/11, 15), and she shows normal or intact memory, attention, and concentration (13F/2, 5, 6, 7; 47F/27; 47F/30, 49, 53, 57, 65, 69, 73). . . . Other times she presents normal or appropriate mood and affect (11F/5, 8, 14, 17; 12F/5, 8, 16, 19; 29F/4, 8), being interactive (26F/15,1 7, 19, 21; 40F/7, 9, 11, 13, 15), pleasant (1F/44, 88, 93, 103; 22F/1; 24F/39, 61; 25F/15, 43, 54; 32F/4, 14, 27, 44; 33F/29; 36F/3) and cooperative (27F/2; 28F/4; 29F/12; 32F/14, 20, 26, 31, 55; 36F/3, 9; 39F/13; 47F/25, 30, 49, 53, 57, 61, 65, 69, 73; 49F/28, 34).

AR at 2395–96. And separately, the ALJ observed Dr. Baum's reports that Plaintiff was alert, oriented, and behaviorally appropriate [AR at 2391 (citing AR at 1602–13)] and Dr. Emery's own findings that she was alert, oriented and engaged [AR at 2387 (citing AR at 489–91)]. Relying on *Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009), the Commissioner urges the Court to read the ALJ's decision "as a whole" and to take account of the record citations found in other portions of her RFC assessments. ECF 19 at 19.

In *Wall*, the court acknowledged that an ALJ "must sufficiently explain the reasons for [her] rulings," but warned that if the court determines "based on a reading of the ALJ's decision as a whole," that "remand would serve no other purpose than to needlessly prolong a protracted course of proceedings," it should not remand. *Wall*, 561 F.3d at 1069 (citing *Fisher-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005)).

Plaintiff attempts to distinguish *Wall*, noting that the court there considered a different portion of the ALJ's decision (*i.e.*, the claimant's subjective allegations of pain) and that it excused

the "less extensive analysis" because none of the record medical evidence conflicted with the ALJ's conclusion that a claimant could perform light work. ECF 22 at 8. Plaintiff contends that here, by contrast, the ALJ's opinion analysis is at issue (rather than Plaintiff's subjective complaints) and that conflicting evidence exists. *Id*.

Two unpublished Tenth Circuit opinions support application of *Wall's* "record as a whole" doctrine to the present case.  First, in in *Webb v. Commissioner, SSA*, 750 F. App'x 718 (10th Cir. 2018), the plaintiff challenged the ALJ's analysis of the treating physician's opinion in which he included a "general reference to medical records 'all discussed above.'" *Id*. at 721. Because it was "not difficult to determine what inconsistencies the ALJ relied upon," the Tenth Circuit was satisfied that the ALJ applied the correct legal standards such that "merely technical omissions in [his] reasoning d[id] not dictate reversal." *Id*. (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court explained that "relying on . . . other medical opinions, which [were] all discussed earlier in the decision (and thus [were] apparent from the ALJ's decision itself), d[id] not constitute an impermissible post hoc justification" for the ALJ's findings. *Id*. Similarly, in *Endriss v. Astrue*, 506 F. App'x 772 (10th Cir. 2012), the Tenth Circuit observed that "[t]he ALJ set forth a summary of the relevant objective medical evidence earlier in his decision[,] and he [was] not required to continue to recite the same evidence again in rejecting [a medical source's] opinion." *Id*. at 777. Because the ALJ's discussion of the opinion made clear the weight the ALJ gave the opinion and the reasons therefor, the court found no reversible error. *Id*.

Here, the ALJ's finding of inconsistency between Dr. Emery's moderate social limitations and other record evidence is likewise capable of meaningful review and supported by extensive record citations provided throughout her RFC assessments. The ALJ was clear that she found Dr. Emery's marked limitations in social functioning and adaptation inconsistent with medical

evidence indicating that Plaintiff was "alert, oriented, and cooperative," with "normal or intact memory, attention, and concentration." AR at 2389. That the ALJ did not *also* supply record citations to the evidence she referenced in the paragraphs comprising her discussion of Dr. Emery's opinion, having done so elsewhere in her decision, was not reversible error. In other words, Plaintiff's attempts to discount the Tenth Circuit's instruction to consider an ALJ's decision as a whole are unavailing.

Plaintiff further challenges the ALJ's consistency analysis on the ground that "mental status findings are not necessarily dispositive." ECF 15 at 17. For this proposition, she relies on a decision from Judge Sweazea: *Casas v. Saul*, No. 1:19-cv-1154-KRS, 2021 WL 107244 (D.N.M. Jan. 12, 2021). ECF 15 at 17. In *Casas*, Judge Sweazea observed, as a general matter, that mental status examinations "document a clinician's observations of the patient *at a particular point in time*." 2021 WL 107244, at *5 (quoting *McGehee v. Saul*, No. 18-cv-1164 KK, 2019 WL 6219507, at *6 (D.N.M. Nov. 21, 2019)) (emphasis added). Acknowledging that it is "entirely proper for an ALJ to consider [such] findings when evaluating the supportability of a medical opinion concerning a claimant's overall mental functioning and limitations," Judge Sweazea observed that "such findings are not necessarily dispositive to this analysis." *Id.* (citations omitted). Judge Sweazea went on to find that the ALJ in *Casas* erred both in her mischaracterization of the consultative examiner's mental status examination findings and in her failure to elaborate on how those findings were inconsistent with the examiner's assessed limitations. *Id*.

Unlike in *Casas*, the ALJ here did not mischaracterize Dr. Emery's mental status examination findings, nor did she find only Dr. Emery's findings inconsistent with his marked limitations. Rather, in finding Dr. Emery's marked limitations inconsistent "with the medical evidence showing [Plaintiff was] alert, oriented, and cooperative" and with "normal or intact

memory, attention, and concentration," the ALJ was referring to the findings of *multiple* providers at *various points in time*, findings she discussed and cited throughout her decision. *See, e.g.,* AR at 2395–96 (citing numerous records). Contrary to Plaintiff's position, the ALJ's consideration of normal mental status examination findings by other providers (and by Dr. Emery) when weighing Dr. Emery's opinions was not improper, and these findings constitute substantial evidence supporting the ALJ's consistency analysis.

Beyond challenging the lack of record citations and the non-dispositive nature of mental status examination findings, Plaintiff suggests that the "record *supports* Dr. Emery's marked limitation in social functioning and adaptation." ECF 15 at 18–20. In this regard, she discusses the findings of other medical sources, to all of which the ALJ gave either partial or little/limited weight for various reasons. *Compare id.* (discussing findings from PA Dountas, LPCC Mohammad Zabihi, Dr. Steven Baum, LPCC Luscha Weeks), *with* AR at 2389–96.

As the Court sees it, Plaintiff's final argument amounts to an invitation to reweigh the evidence, an activity in which the Court will not engage. *Newbold*, 718 F.3d at 1262 ("In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency."); *Oldham*, 509 F.3d at 1257 (a court is to "review only the sufficiency of the evidence, not its weight"). Although Plaintiff's arguments may raise the possibility of drawing a different conclusion from the evidence, the Court is satisfied that the ALJ gave good reasons supported by substantial evidence for rejecting Dr. Emery's marked limitations in social functioning and adaptation and for favoring *moderate* limitations in those areas of functioning, for which she accounted in her RFCs. *See* AR at 2383 (limiting Plaintiff to "occasionally interact[ing] with coworkers, supervisors and the general public, with no customer service work" and to work "performed in the same location ever day"), 2397 (same). Accordingly, the Court recommends

Plaintiff's motion be denied on this ground.

### D. The ALJ did not err in her analysis of Plaintiff's subjective complaints, and her RFCs are based on substantial evidence.

In her final claim for relief, Plaintiff contends that the ALJ's two RFCs are not based on substantial evidence because, contrary to *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), SSR 96-8p, and SSR 16-3p, the ALJ impermissibly excluded Plaintiff's complaints of fibromyalgia, back pain, neuropathy, and somatic symptom disorder from her subjective complaints analysis. ECF 15 at 21–22. In response, the Commissioner insists that the ALJ reasonably discounted Plaintiff's complaints of disabling symptoms and considered her subjective complaints in light of the medical and non-medical evidence of record. ECF 19 at 20 (citing 20 C.F.R. §§ 404.1529, 404.1545, 404.1546(c), SSR 16-3p). Plaintiff acknowledges that the ALJ recounted some of her subjective complaints but insists that she failed to adequately link many of those complaints to the evidence. ECF 15 at 23 (citing AR 2383–87). Although the ALJ addressed Plaintiff's obesity, lower extremity conditions, and mental impairments, Plaintiff suggests that she failed to address her fibromyalgia, back pain, or neuropathy. *Id.* (citing AR 2386–87). The Commissioner describes Plaintiff's characterization of the ALJ's analysis as unfair and insists that the ALJ pointed to specific evidence that was inconsistent with Plaintiff's claims of disabling symptoms. ECF 19 at 23 (citing *Scott v. Berryhill*, 695 F. App'x 399, 404–05 (10th Cir. 2017)).

SSR 16-3p defines the two-step process an ALJ must use when evaluating a claimant's symptoms, *see* SSR 16-3p, 2017 WL 5180304 (2017). At the first step, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce [the] individual's symptoms such as pain." *Id*. at *3. At the second step, after the ALJ has found such an impairment, she "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the]

individual's ability to perform work-related activities . . . ." *Id.* The ALJ considers the record evidence, the claimant's statements, the medical and non-medical source statements, and non-exhaustive factors, which include:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain and or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medications an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 2 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restriction due to pain or other symptoms.

*Id.* at *7–8. Significantly, an ALJ's symptom evaluations "warrant particular deference." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001).

Here, the ALJ devoted three single-spaced pages to her discussion of Plaintiff's subjective symptom testimony and other subjective reports, including those related to fibromyalgia, back pain, and neuropathy. *See* AR at 2384–86. She noted Plaintiff's reports of constant and "horrible" pain, including in her legs and back, which purportedly affects her ability to stand or to remain in one position. AR at 2384–85. Acknowledging the connection to fibromyalgia, the ALJ described Plaintiff's reported pain as "fibromyalgia pain" and "fibro achiness." *See, e.g.*, AR at 2385. The ALJ also acknowledged that Plaintiff has "peripheral neuropathy"[12] [AR at 2386] and recounted her complaints of numbness, tingling, and pain from the use of her arms and especially from repeated use of her left dominant side [*see* AR at 2385]. However, the ALJ determined that

---

[12] The ALJ characterized Plaintiff's peripheral neuropathy as a severe impairment and, as a result, considered Listing 11.14. AR at 2381. She determined that Plaintiff's peripheral neuropathy did not meet Listing 11.14, because the record shows that she ambulates unassisted and generally has normal gait, strength, sensation, and coordination. AR at 2381 (citation omitted).

Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in [her] decision.*" AR at 2383–86 (emphasis added). The ALJ's RFC assessments offered various rationales for discounting Plaintiff's subjective complaints of disabling pain and somatic symptoms, and she discussed many of the factors enumerated in SSR 16-3p. *See* AR 2386–99.

For activities of daily living, the ALJ observed that Plaintiff can manage her personal care, cook simple meals, do some chores, drive, go out alone, and manage money. AR at 2383–86. She acknowledged reports that Plaintiff's children and friends assist her with groceries and chores. AR at 2384. She noted Plaintiff's reports that she goes camping once per year (but sleeps in a camper and sits in a chair), visits her niece, and walks across the street to visit her sister. AR at 2386.

With respect to objective medical evidence, the ALJ discussed various MRI results that revealed mostly mild degenerative findings as well as physical exams that generally showed normal gait, motor strength, sensation, and coordination. AR 2387–98 (citing, *e.g.*, AR 410, 414, 420, 437, 490, 696, 2129, 2145, 2155–56, 2170, 2175–76, 2179–80, 2913, 3178–79, 3221, 3232, 3237–38, 3248–49, 3256).

In terms of treatment, the ALJ noted that Plaintiff reported temporary relief from trigger point injections in her neck and left upper back as well as "significant relief" from cervical facet steroid injections. AR 2380, 2384, 2394, 2397–98 (citing AR at 2135, 2152, 2164, 3236). She also acknowledged that Plaintiff was taking various medications for her fibromyalgia pain and other impairments, including narcotics, muscle relaxers at bedtime, prednisone every three to four months, which "does help," and hydrocodone four times per day, which "takes the edge off." AR 2386 (citing AR at 324–25, 329, 1522–23, 1527, 1567, 2748, 2769–71). Despite the use of these

medications and some reported constipation, dizziness, and grogginess [AR 2384 (citing AR at 1204–42)], the ALJ emphasized that Plaintiff was repeatedly observed to be alert and oriented, in no acute distress, and able to ambulate unassisted with normal gait, strength, sensation, and coordination during physical exams. AR at 2381, 2384, 2387, 2389, 2391, 2395, 2397–99 (citing AR at 410, 426, 432, 437, 442, 489–93, 588, 625, 650, 1204–42, 1601–13, 1624, 1632, 1638, 1644, 1666, 1675, 1967, 1974, 1984, 2006, 2015, 2060, 2066, 2085, 2073, 2101, 2138, 2123–25, 2144, 2153, 2155, 2176, 2180, 2189, 2197, 2223, 2256, 2274, 2849, 2853, 2868, 2876, 2882, 2893, 2925, 2933, 2938, 2943, 3194–99, 3221, 3225, 3232).

As to Plaintiff's somatic symptom disorder, Plaintiff argues that because the ALJ neither explicitly discussed that impairment within her subjective complaints analysis nor explained how that disorder "informed [Plaintiff's] experiences of physical and mental health symptoms," she committed reversible error. ECF 15 at 26 (citing *Dominguez v. Kijakazi*, No. 21-cv-380 SMV, 2022 WL 3042490 (D.N.M. Aug. 2, 2022)). The Court is not persuaded.

In *Dominguez*, the case on which Plaintiff principally relies, Judge Vidmar observed that the ALJ failed to make any findings as to the plaintiff's somatic symptom disorder, or even to mention the diagnosis. 2022 WL 3042490, at *4. He noted, for example, that the ALJ failed to apply the correct legal standard at step three because he failed to make any findings as to Listing 12.07, which applies to "Somatic symptom and related disorders."[13] *Id.* (citing 20 C.F.R. pt. 404,

---

[13] 12.07 Somatic symptom and related disorders (see 12.00B6), satisfied by A and B:
    A.  Medical documentation of one or more of the following:
        1.  Symptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder;
        2.  One or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or
        3.  Preoccupation with having or acquiring a serious illness without significant symptoms present.
AND
    B.  Extreme limitations of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
        1. Understand, remember, or apply information (see 12.00E1).
        2. Interact with others (see 12.00E2).

subpt. P, app. 1, § 12.07). Because a reasonable adjudicator applying the correct legal standard could have found that the Ms. Dominguez met Listing 12.07 for somatic symptom and related disorders, Judge Vidmar concluded that remand was warranted for evaluation of her somatic-symptom-related condition in the first instance. *Id*.

By contrast, the ALJ here found that Plaintiff's somatic symptom disorder was a severe impairment. AR at 2379, 2382, 2386 (citing AR at 1690–93). She also acknowledged that during psychological evaluations conducted by Steven Baum, Ph.D in 2019 and 2023, testing indicated "somatic concerns." AR at 2391, 2394, 2397, 2399. Although the ALJ did not explicitly discuss Listing 12.07, her step-two analysis otherwise rated Plaintiff's functioning in the *same four areas* outlined for somatic symptoms and disorder. *Compare* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.07(B), *with* 2381–82. And as the Commissioner points out, the ALJ discussed much of the same evidence that Plaintiff highlights to support her argument that the ALJ's consideration of her somatic symptoms were inadequate. *Compare* AR 2386–87, 2391, 2394, *with* ECF 15 at 24–26.

The Court is ultimately not persuaded that the ALJ's discussion and findings with respect to Plaintiff's somatic symptoms constitute reversible error. More generally, the Court agrees with the Commissioner that Plaintiff's routinely normal examination findings, as thoroughly detailed by the ALJ with citations to the record, constitute substantial evidence supporting her finding as to Plaintiff's subjective complaints of disabling symptoms and limitations. *See Megginson v. Bowen*, 489 F. App'x 260, 263 (10th Cir. 2012).

Next, Plaintiff contends that the ALJ failed to make an adequate connection between her fibromyalgia symptoms and the evidence of record. ECF 15 at 26 (citing *Kepler v. Chater*, 68 F.3d 387 (10th Cir. 1995)). To the contrary, not only did the ALJ reference Plaintiff's fibromyalgia

---

3. Concentrate, persist, or maintain pace (see 12.00E1).
4. Adapt or manage oneself (see 12.00E4).

impairment nineteen times in her RFC assessments, she adequately linked that condition and its symptoms to the assessed postural and environmental limitations, with citations to the record. *See, e.g.*, AR at 2392 (noting, in the context of her discussion of Plaintiff's fibromyalgia, that "clinical observations regarding [Plaintiff's] ability to ambulate unassisted and having normal gait, sensation, strength and coordination are inconsistent with a patient who can only stand and walk for less than two hours in an eight-hour workday"). The same is true with respect to Plaintiff's peripheral neuropathy and back or spine impairments. *See* AR 2389–92.

Taken as a whole, and affording the deference due an ALJ's subjective symptoms analysis, the Court finds that the ALJ provided good reasons supported by substantial evidence for not fully accepting Plaintiff's subjective symptom complaints. Relatedly, the Court is satisfied that the ALJ adequately explained her findings regarding those complaints pursuant to SSR 16-3p and that Plaintiff has not identified any meritorious reason for remand. Accordingly, the Court recommends that her motion be denied on this final ground.

## VI.  CONCLUSION

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, Plaintiff's Motion to Reverse and Remand to Agency [ECF 15] be **DENIED**, and this case be **DISMISSED WITH PREJUDICE**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.