## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

DULCINIA ANN PADILLA,

     Plaintiff,

     v.                           Case No. 1:24-cv-00658 KWR/GJF

FRANK BISIGNANO, *Commissioner*
*of the Social Security Administration*,

     Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Judge Fouratt's Proposed Findings and Recommended Disposition ("PFRD"). Doc. 24. Plaintiff filed this case seeking review of the determination of the Commissioner of the Social Security Administration ("the Commissioner") that she is not entitled to disability insurance benefits or supplemental security income under Title II or Title XVI of the Social Security Act. She requests the Court reverse the Commissioner's decision and remand the matter for a rehearing. Mot., Doc. 15 at 1. Judge Fouratt recommended that the Court deny the motion. PFRD, Doc. 24. The PFRD notified the parties of their ability to file objections within fourteen days, and that failure to do so waived appellate review. *Id.* at 34. On August 20, 2025, Plaintiff timely filed her Objections to Magistrate Judge's August 6, 2025 Proposed Findings and Recommended Disposition. Doc. 25.

Pursuant to Fed. R. Civ. P. 72(b), the Court has conducted a *de novo* review of the record and all parts of the Magistrate Judge's PFRD that have been properly objected to. After conducting this *de novo* review and having thoroughly considered the PFRD and the objections, the Court finds no reason either in law or fact to depart from Judge Fouratt's recommended disposition. The

Court overrules Plaintiff's objections, adopts the PFRD, and denies Plaintiff's motion to remand for a new hearing.

## BACKGROUND

The Court adopts the background and summary of the record set forth by Judge Fouratt, as it is undisputed and the Court otherwise finds it well taken. *See* PFRD, Doc. 24 at 1-7. In short, this is Plaintiff's third appeal following the denial of disability benefits. She originally filed for disability insurance benefits on January 20, 2016.

Plaintiff alleges she became disabled on "October 1, 2015, due to major depressive disorder, post-traumatic stress disorder ("PTSD"), insomnia, anxiety disorder, fibromyalgia, peroneal tendonitis, shoulder joint pain, and ankle pain." PFRD, Doc. 24 at 2 (citing Administrative Record ("AR") at 102–03, 219–20, 251). "She was later diagnosed with and treated for additional impairments, including peripheral neuropathy, somatic symptom disorder, and degenerative disc disease of the cervical and lumbar spine." PFRD, Doc. 24 at 2 (citing AR 2379, 2383–87, 2397-2401). "She also has a history of obesity." *Id.*

Plaintiff's case was remanded to the Commissioner for further proceedings twice. Plaintiff's case went to a third hearing before Administrative Law Judge Fellabaum, who issued an unfavorable decision on April 17, 2024. AR 2376-2401. The ALJ found she had the following severe impairments:

> fibromyalgia, left ankle peroneal tendinitis, bilateral hallux valgus with bunions, obesity, peripheral neuropathy, anxiety, depression, post-traumatic stress disorder (PTSD), psychotic disorder, and somatic symptom disorder. She also has bilateral hip degenerative joint disease since June 2018, degenerative disc disease of the cervical spine since October 2019, degenerative disc disease of the lumbar spine since December 2020, degenerative joint disease and meniscal tear of the right knee since January 2021, right hearing loss since July 2022, and plantar fasciitis since September 2023.

AR at 2379. However, ALJ found that Plaintiff had the residual functional capacity ("RFC") to

perform a reduced range of light work with the following limitations, between October 2015 and

September 2019:

> [S]he could occasionally climb ramps and stairs, crouch and crawl. She could never
> climb ladders, ropes or scaffolds, or be exposed to unprotected heights, hazardous
> machinery, or have concentrated exposure to environmental irritants or extreme
> cold. She could not operate a motor vehicle for commercial purposes; she could
> occasionally use bilateral foot controls; she can perform simple, routine tasks, with
> no fast paced assembly line work; she could make simple work decisions.  Her work
> should be performed in the same location every day. She could occasionally interact
> with co-workers, supervisors and the general public, with no customer service
> work.

AR at 2383. "The ALJ found that Plaintiff had the same RFC, except with additional manipulative

limitations for reaching and handling beginning in October 2019, as well as an additional noise

level limitation beginning in July 2022." PFRD, Doc. 24 at 7 (citing AR at 2396–97 ("She can

occasionally reach overhead and frequently reach in other directions with the left dominant upper

extremity. She can frequently handle with the left dominant upper extremity. She can frequently

reach in all directions with the right non-dominant upper extremity. . . . As of July 2022, the noise

level of the work environment should be moderate or less.")).

The ALJ found she could perform three representative jobs: coin machine collector,

collator operator, and marker.  AR at 2400. Therefore, the ALJ concluded she was not disabled.

AR at 2401.

Plaintiff subsequently appealed to this court. Doc. 1.

## LEGAL STANDARD

Where a party files an objection to a PFRD, the Court reviews the record relevant to the

objections *de novo*. *United States v. One Parcel of Real Property, With Buildings, Appurtenances,*

*Improvements, and Contents, Known as: 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057,

1059-60 (10th Cir. 1996) ("One Parcel"). " 'The filing of objections to a magistrate's report

enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.' " *Id.* (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). The Tenth Circuit has adopted a firm waiver rule, where the failure to make timely and specific objections to a PFRD waives both district court and appellate review. *One Parcel*, 73 F.3d at 1059-60.

An objection must be sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute. *One Parcel*, 73 F.3d at 1059-60. By contrast, objections that are "nonspecific, too general, and fail[] to meaningfully address the PFRD's ultimate holding or its underlying findings and conclusions[]" may be deemed waived. *Leal v. United States*, No. CIV 22-761 JB/JFR, 2023 WL 6360864, at *4 (D.N.M. Sept. 29, 2023); *see also Shepherd v. Rios*, 2018 WL 1866111, at *1 (W.D. Okla. Apr. 18, 2018) (deeming waived objection that "d[id] not attempt to come to grips with [PFRD's] analysis or conclusions in any specific way, [but] rel[ied] for the most part on re-adopting . . . earlier arguments."). The failure to file specific objections waives *de novo* review by the district court. *See One Parcel*, 73 F.3d at 1060–61 (10th Cir. 1996).

### DISCUSSION

Plaintiff asserted four claims of error.  Mot., Doc. 15.  She asserts that:

- The ALJ erred by failing to follow the U.S. District Court mandate and subsequent order of the Appeals Council with respect to her consideration and weighing of a treating provider's opinions. Doc. 15 at 6-12;

- The ALJ improperly picked and chose among the limitations found by the agency's non-examining psychologist, Lynette Causey, Ph.D. Doc. 15 at 12–14;

- The ALJ failed to properly weigh the opinion of consultative psychologist Michael P. Emery, Ph.D. Doc. 15 at 15–21; and

- The residual functional capacity assessments are not based on substantial evidence because the ALJ impermissibly excluded Plaintiff's complaints of fibromyalgia, back pain, neuropathy, and somatic system disorder from her subjective complaints analysis. Doc.15 at 21–27.

Judge Fouratt issued a PFRD recommending the Court deny Plaintiff's Motion. PFRD, Doc. 24. Plaintiff objects to the PFRD's disposition on all four of her claims of error. As explained below, the Court overrules Plaintiff's objection, adopts the PFRD, and denies Plaintiff's Motion.

**I.    The ALJ did not err by allegedly failing to follow the U.S. District Court mandate or the subsequent order of the Appeals Council or by improperly weighing the opinions of treating provider PA Heather Dountas.**

Plaintiff alleges that the ALJ erred by (1) failing to follow the mandate or (2) failing to properly weigh the opinion of a treating medial provider, PA Heather Dountas. For all the reasons stated by Judge Fouratt in his thorough PFRD, the Court concludes that the ALJ complied with the mandate, adequately weighed PA Dountas's opinions pursuant to 20 C.F.R. §§ 404.1527 and 416.927,[1] and adequately explained the weight given to those opinions.

"The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.*

---

[1] The Court applies these regulations because her initial claim for disability benefits was filed in 2016.

"Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned. If this is not done, a remand is required." *Id.* (internal citations omitted).

> The ALJ must evaluate medical opinions according to the following factors:
>
> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331 (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)); *accord* 20 C.F.R. §§ 404.1527(c), 416.927(c). "In applying these factors, the ALJ's findings must be sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reason for that weight." *Krauser*, 638 F.3d at 1331. An ALJ is "not required to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Razo v. Colvin,* 663 F. App'x 710, 715 (10th Cir. 2016), *quoting Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).  Even so, the Tenth Circuit has cautioned that "[i]f the ALJ rejects [an] opinion completely, he must then give specific, legitimate reasons for doing so." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004). Moreover, the ALJ was required to explain not only the evidence supporting her decision but also the significantly probative or uncontroverted evidence on which she did not rely. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996); *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009).

Plaintiff asserts that the ALJ improperly discounted or minimized the weight given to various opinions provided by her treating provider, PA Heather Dountas. Moreover, Plaintiff alleges that by deviating from Judge Ritter's July 23, 2022 remand order and the Appeals Council's October 11, 2022 Order Remanding Case to Administrative Law Judge, the ALJ committed reversible legal error. Doc. 15 at 7 (citing *Sullivan v. Hudson*, 490 U.S. 877, 886 (1996)). As explained by Judge Fouratt, Judge Ritter's remand order did not address the merits of the appeal but merely granted the Commissioner's unopposed motion to reverse and remand. AR at 2459-60. However, the Appeals Council's remand order included the following instructions and reasoning:

> The Appeals Council's remand order… concluded that ALJ Lilian Richter's 2021 "hearing decision [did] not contain an adequate evaluation of the opinions from Heather Dountas, PA-C[,]" Plaintiff's primary care provider. AR at 2463. According to the Appeals Council, ALJ Richter provided inadequate explanation for affording "little weight" to PA Dountas's opinions. *Id*. First, the Council noted that the ALJ discounted PA Dountas's opinions as primarily based on Plaintiff's subjective reports even though some of her opinions were based on observations and physical examinations of Plaintiff. *Id*. In addition, the Council found that ALJ Richter failed to explain how Plaintiff's activities of daily living were inconsistent with PA Dountas's opinions. AR at 2464. Finally, the Council found treatment notes documenting generally normal physical findings, including normal gait and unassisted ambulation, to be a relevant consideration but insufficient basis for giving PA Dountas's opinions little weight. *Id*. **For all these reasons, the Appeals Council instructed the ALJ to give further consideration to PA Dountas's opinions pursuant to 20 C.F.R. §§ 404.1527 and 416.927, and to explain the weight given to those opinions.** *Id*.

PFRD, Doc. 24 at 7-8 (emphasis added).

Thus, at issue is whether the ALJ sufficiently explained the weight given to the opinions of Plaintiff's treating provider pursuant to 20 C.F.R. §§ 404.1527 and 416.927. The Court concludes she did, as explained below.

### A.   The ALJ adequately explained the weight given to the treating provider's opinions.

As explained in detail by Judge Fouratt, ALJ Fellabaum offered various reasons for assigning little or limited weight to PA Dountas's opinions, because they were inconsistent with

medical evidence, unsupported, and vague. AR at 2389-96.  As explained by Judge Fouratt, she independently discussed each opinion, the weight assigned to that opinion, and the reasons therefor:

- With respect to PA Dountas's June 20, 2016 opinion, the ALJ explained that she gave only "partial weight" to the assessed limitations because standing and walking for less than two hours in workday and needing to alternate positions were "not consistent with the medical evidence and not adequately supported by Ms. Dountas." AR at 2389.  In support, the ALJ explained that "several [treatment] notes show that [Plaintiff] ambulates unassisted . . . with normal gait, strength, sensation, and coordination." AR at 2389–90. In contrast, the ALJ concluded that the moderate limitations PA Dountas assessed in attention and concentration, pace, and making simple decisions were "consistent with the record and [Plaintiff's] history of depression, anxiety, and PTSD, as well as with Dr. Emery's examination." AR at 2390.

- The ALJ gave "limited weight" to PA Dountas's April 12, 2016 opinion that Plaintiff was no longer able to work in a normal capacity due to overwhelming pain and fatigue and the sedating effect of her pain medications. AR at 2390 (citing AR at 541). Although the ALJ acknowledged that Plaintiff's physical impairments cause *some* limitations, she noted that PA Dountas had not specified the extent of Plaintiff's limitations nor described how her pain and fatigue would impact specific functional activities. *Id*.

- The ALJ gave Dountas's May 21, 2018 opinion "limited weight." AR at 2390–91 (citing AR at 973). She noted that PA Dountas assessed more significant limitations than she had in June 2016 without explaining why she had done so. AR at 2391. As before, ALJ Fellabaum described PA Dountas's finding of a standing and walking limitation as inconsistent with treatment notes showing that Plaintiff ambulates unassisted and has normal gait (except some reduced range of motion in her left ankle), strength, sensation, and coordination. *Id*. (citations omitted). As to mental limitations, the ALJ concluded that the marked limitations PA Dountas assessed were "not consistent with notes showing [Plaintiff was] alert and oriented [with] normal memory, attention, and concentration. *Id*. According to the ALJ, "[t]here [was] nothing noted in [PA Dountas's] opinion or [Plaintiff's] mental health treatment that explains or supports the increased mental limitations" that PA Dountas assessed. *Id*.

- The ALJ again gave "little weight" to PA Dountas's November 20, 2020 opinion, observing that PA Dountas's "physical opinion[s] [were] based on subjective questioning of [Plaintiff] and some abnormal findings on physical examination." AR at 2392 (citing AR at 1691 (noting that the limitations were derived from "subjective questioning" of Plaintiff because PA Dountas "do[esn't] do functional capacity testing")). Once again, the ALJ concluded that clinical observations that Plaintiff could ambulate unassisted and had normal gait, sensation, strength, and coordination were inconsistent with PA Dountas's assessed limitations of standing and walking for less than two hours in a workday. AR at 2392. With respect to the marked mental limitations that PA Dountas assessed, the ALJ

observed that Plaintiff was described as "alert, oriented, pleasant, and cooperative," several times with "adequate fund of knowledge, and intact or appropriate memory, attention, and concentration." *Id*.

- The ALJ determined that PA Dountas's August 18, 2021 opinion "deserves little weight." AR at 2393 (citing AR at 2356). She explained that "[d]espite stating that [the assessed] limitations existed since October 2015, Ms. Dountas fail[ed] to explain how and why her opinions have varied regarding [Plaintiff's] physical and mental limitations over time, as she assessed them in multiple prior opinions." *Id*. Although the ALJ considered the assessed ability to lift and carry 20 pounds occasionally and 10 pounds frequently to be "consistent with the overall record showing normal gait, strength, sensation, reflexes and coordination," she found "little to no evidence consistent with significant manipulative limits." *Id*. Once again, the ALJ characterized the assessed marked mental limitations as inconsistent with "clinical observations throughout the record regarding [Plaintiff's] mood, affect, attitude, fund of knowledge, awareness and orientation, [and] attention and concentration." *Id*.

- The ALJ again assigned "little weight" to PA Dountas's August 14, 2023 opinion. AR at 2393 (citing AR at 3035). She noted that PA Dountas assessed a limitation of lifting and carrying only five pounds occasionally while describing this as Plaintiff's "baseline" since 2015. *Id*. To the contrary, the ALJ observed that PA Dountas's 2023 lifting and carrying limitations were inconsistent with many of her previous assessments and yet she provided "no support for or explanation of why she ha[d] changed her opinions over time."[2] *Id*. The ALJ described PA Dountas's notations that various assessed limitations were "baseline since 2015" as "general and vague explanation[s] without reference to any specific clinical findings." AR at 2394. As for PA Dountas's assessed limitations regarding overhead reaching, the ALJ concluded that Plaintiff had no significant medically determinable shoulder impairment and that a limitation to reaching overhead less than occasionally was not "entirely consistent" with the record. *Id*.

- Finally, the ALJ determined that PA Dountas's March 18, 2024 letter to the ALJ "deserve[d] little weight." AR at 2396 (citing AR at 3267). The ALJ explained that while some effect on concentration, completing tasks, and socializing was expected due to Plaintiff's fibromyalgia and major depressive disorder, PA Dountas opinions—that fibromyalgia "affects" her concentration and task completion and that depression "affects" her ability to socialize, eat properly, exercise, and sleep—were "vague and too general," rendering them "not useful." *Id*.

PFRD, Doc. 24 at 9-11.

---

[2] The ALJ detailed the variation in PA Dountas's assessments of Plaintiff's ability to lift and carry: less than 20 pounds even occasionally in June 2016, less than 10 pounds occasionally and less than five pounds frequently in May 2018, 10 pounds occasionally in November 2020, 20 pounds occasionally and 10 pounds frequently in August 2021, and five pounds occasionally and less than five pounds frequently in August 2023. AR at 2394.

Following her discussion of each of PA Dountas's opinions, the ALJ summarized her reasons for discounting them:

> None of [her opinions] contain a summary of clinical findings pointing to specific deficits or limitations of range of motion, strength, gait, station, coordination, sensation, or reflexes. The opinions also do not provide any explanation of why her opinions changed over time and what supports those changes. Although the evidence demonstrates that [Plaintiff] had later onset impairments that result in additional limitations, none of Ms. Dountas's opinions explain why [she] would assess *fewer* limitations on [Plaintiff's] functional abilities after she has additional impairments and limitations.

AR at 2394 (emphasis added), *quoted in* PFRD, Doc. 24 at 12.

The Court agrees with Judge Fouratt that "[t]he ALJ's methodical explanation of why she discounted PA Dountas's various opinions suggests that she considered the applicable factors and supported her findings with substantial evidence. It also permits the Court to follow her reasoning." PFRD, Doc. 24 at 12.  Here, the ALJ did not "pick and choose which aspects of an uncontradicted medical opinion to [accept]." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). Rather, the ALJ "provided good reasons in [her] decision for the weight he gave to the treating source['s] opinion[ ]. Nothing more was required in this case." *Oldham*, 509 F.3d at 1258 (citation omitted), *quoted in Razo v. Colvin*, 663 F. App'x 710, 715 (10th Cir. 2016).

Plaintiff objects to Judge Fouratt's conclusion that the ALJ considered the applicable factors.  PFRD, Doc. 24 at 12, 14; Obj., Doc. 25 at 4, 6. Plaintiff alleges that failure to follow the mandate resulted in an improper weighing of the treating provider's opinions. Obj., Doc. 25 at 4. Specifically, Plaintiff asserted that the ALJ failed to *expressly* consider each factor in her written decision. Judge Fouratt recommended finding that the ALJ considered the factors. The Court agrees with Judge Fouratt.  *First*, the ALJ was not required to expressly address each factor in her written decision. *Razo*, 663 F. App'x at 715 (quoting *Oldham*, 509 F.3d at 1258).  *Second*, even if she were required, she adequately addressed the factors. The ALJ discussed the duration of

treatment, discussed each of PA Dountas's opinions, and assigned weight to each of those opinions, which clearly showed that she considered (1) the length of the treatment relationship and frequency of examination and (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination and testing performed.  As explained by Judge Fouratt, the ALJ noted that Plaintiff was in PA Dountas's care since 2008, and she separately and extensively discussed each of PA Dountas's opinions from 2016, 2018, 2020, 2021, 2023, and 2024. AR at 2389-96; PFRD, Doc. 24 at 14-15. Next, as explained above, Plaintiff discussed each of PA Dountas's opinions to assign them weight, and discussed (1) the degree to which the opinion is supported by relevant evidence and (2) the consistency between the opinion and the record as a whole.  As to the fifth factor, there is no dispute that the ALJ was aware that PA Dountas is a physician assistant in primary care and not a specialist.

Plaintiff also asserts that the ALJ violated the mandate by relying upon normal physical findings. Doc. 15 at 11, *citing* AR 2464.  The Council's mandate provided in relevant part as follows:

> Finally, the Council found treatment notes documenting generally normal physical findings, including normal gait and unassisted ambulation, to be a relevant consideration but insufficient basis for giving PA Dountas's opinions little weight. *Id*. For all these reasons, the Appeals Council instructed the ALJ to give further consideration to PA Dountas's opinions pursuant to 20 C.F.R. §§ 404.1527 and 416.927, and to explain the weight given to those opinions. *Id*.

PFRD, Doc. 24 at 7-8. However, as explained by Judge Fouratt, the ALJ was allowed to consider the normal physical findings, but not solely rely on them. PFRD, Doc. 24 at 12-13.  The ALJ clearly relied upon other reasons as well for discounting PA Dountas's opinion.

Plaintiff cites to SSR 12-2p to support her argument that physical findings are "'not determinative of fibromyalgia pain and symptoms.'" PFRD, Doc. 24 at 13, *quoting in part* Mot., Doc. 15 at 11. "As the Commissioner points out, SSR 12-2p does not define what a claimant must

show to demonstrate *disability* due to fibromyalgia. Rather, it describes the parameters for establishing fibromyalgia as a medically determinable impairment at step two of the sequential evaluation process." PFRD, Doc. 24 at 13 (citing SSR 12-2p, 2012 WL 3104869, at *2–5). "According to SSR 12-2p, when assessing an RFC for a person with a medically determinable impairment of fibromyalgia, which the ALJ found Plaintiff to have, the ALJ considers the longitudinal medical records and the objective medical evidence therein in assessing Plaintiff's RFC." *Id*. at *6. The Tenth Circuit's reasoning in *Trujillo v. Commissioner*, *SSA*, 818 F. App'x 835 (10th Cir. 2020) is instructive:

> [H]aving a pain-producing impairment does not necessarily mean a person is disabled. "[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986) (quotation omitted). Accordingly, SSR 12-2p distinguishes between a fibromyalgia diagnosis and a finding that a person with that diagnosis is disabled. *See* SSR 12-2p, 2012 WL 3104869, at *5. And it notes that an ALJ "must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." *Id*. at *2. SSR 12-2p also stresses the importance of considering the claimant's longitudinal record in assessing the existence, severity, and disabling effects of fibromyalgia. *See id*. at *3, *5 (noting that fibromyalgia symptoms "may vary in severity over time"), *6. We therefore reject Trujillo's perfunctory assertion that it was "improper" for the ALJ to rely on objective medical evidence in the longitudinal record.

818 F. App'x at 844. Judge Fouratt concluded that, "as in *Trujillo*, it was not improper, despite Plaintiff's fibromyalgia, for the ALJ to rely on objective medical evidence in her step-four analysis or in determining that Plaintiff was not disabled." PFRD, Doc. 24 at 14. The Court agrees with Judge Fouratt's analysis and adopts it.

Plaintiff objects to Judge Fouratt's reliance upon *Trujillo*, arguing that the ALJ did not review the longitudinal medical record. Obj., Doc. 25 at 7. Notably, Plaintiff did not argue in her motion that the ALJ failed to consider objective medical evidence in the longitudinal medical

record. *See* Mot., Doc. 15 at 6-12. At issue in the Motion was whether the ALJ was permitted to consider Ms. Padilla's physical examinations and objective medical evidence in considering whether or not she was disabled. Mot., Doc. 15 at 11; PFRD, Doc. 24 at 13-14. Plaintiff now argues that the longitudinal record review by the ALJ was deficient, but that was not raised in the motion. The Court declines to consider arguments raised for the first time in objection to a PFRD and which were not raised in the motion.[3]

Plaintiff also asserts that the ALJ erred by mischaracterizing the assessed limitations as "mental" opinions, insisting they were instead related to her pain and fatigue. Mot., Doc. 15 at 11. The Commissioner asserts that "[t]he opinions Plaintiff refers to are very much related to mental functioning—namely, her ability to maintain attention and concentration, perform activities within a schedule, sustain an ordinary routine, and complete a normal workday and workweek." Doc. 19 at 13 (citing AR at 974, 2357, 3036). As explained by Judge Fouratt,

> To the extent Plaintiff suggests the ALJ committed reversible error by recognizing the mental components of the limitations assessed in PA Dountas's Medical Assessment of Ability to Do Work-Related Activities (Non-Physical), the Court is unpersuaded. *Compare* AR at 2357 (assessing the "non-physical" abilities to maintain concentration and attention, to maintain regular attendance and punctuality, and to complete a normal workday and workweek while performing at a consistent pace), *with* POMS DI § 25020.010(B)(2)(a) (recognizing that these same abilities are "*mental* abilities needed for any job" (emphasis added)). More to the point, the Court can follow the ALJ's reasoning when she concludes that marked limitations in maintaining attention and concentration, maintaining regular attendance and punctuality, and completing a normal workday and workweek while performing at a consistent pace are at odds with treatment notes which "show that even with her physical and mental limitations, [Plaintiff] is alert, oriented, pleasant and cooperative[,] . . . [has an] adequate fund of knowledge, and intact or appropriate memory, attention and concentration." *See* AR at 2392.

PFRD, Doc. 24 at 17-18. The Court agrees with Judge Fouratt and overrules Plaintiff's objection.

---

[3] Alternatively, to the extent the Court must address this objection, the Court concludes that the ALJ extensively considered the medical record. *See* Resp., Doc. 19 at 6-24; AR 2383-99.

**B.    The ALJ adequately considered whether PA Dountas's opinions were supported in the record.**

Plaintiff appears to assert that the ALJ failed to adequately consider whether PA Dountas's opinions were supported by the record, a factor mentioned above. Mot., Doc. 15 at 8. Specifically, Plaintiff asserts that the ALJ failed to adequately consider PA Dountas's "explanatory material" in her weighing of PA Dountas's opinion. The Court disagrees, and concludes that the ALJ adequately considered this material.

In assigning weight to a treating provider's opinion, the ALJ was required to consider whether PA Dountas's opinion was supported by relevant evidence in the record. *Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011) (listing factors to consider in assigning weight to treating provider's opinions).

Plaintiff asserts PA Dountas included explanatory material regarding the sedative effect of pain medication affecting Plaintiff's concentration, "the inability to get restorative sleep, pain difficult to control, weight fluctuates, depression constantly affects concentration and focus," and that "fibromyalgia not only affects her pain, stamina, but disrupts restorative sleep that affects concentration and ability to complete tasks: along with refractory difficult to treat depression." Mot., Doc. 1 at 10 n.7, *citing* AR 541, 3038, 3267. Plaintiff asserts that the ALJ failed to adequately consider these materials.

Judge Fouratt found that the ALJ considered and discussed the items of explanatory material to which Plaintiff referred. PFRD, Doc. 24 at 15, *citing* AR at 2390 (observing that PA Dountas opined that Plaintiff's pain medications "are sedating and can affect concentration" but giving her opinions little weight because they failed to specify the extent of the limitations or how Plaintiff's pain and fatigue would impact specific functional activities"), *and* AR at 2393

14

(acknowledging that PA Dountas opined that Plaintiff was unable to get restorative sleep or to control her pain or her weight, and that her depression affected her concentration and focus). The ALJ found that the explanatory material supported PA Dountas's 2016 opinion that Plaintiff had moderate limitations in attention and concentration, pace, and making simple decisions. PFRD at 16, *citing* AR at 2390. After the considering the explanatory materials, the ALJ was not *required* to conclude that those materials supported PA Dountas's assessed *marked* limitations in her weighing of PA Dountas's opinions. Therefore, the ALJ did not err in her consideration of the "so-called 'explanatory material.'" PFRD, Doc. 24 at 16.

In her reply brief, Plaintiff argued that the ALJ failed to consider how PA Dountas's fibromyalgia assessments supported her opinions. Plaintiff also objected that the ALJ did not go into "any sort of analysis concerning Ms. Padilla's fibromyalgia." Obj., Doc. 25 at 6. Judge Fouratt explained that "[t]he ALJ discussed many of the fibromyalgia symptoms and effects noted in PA Dountas's fibromyalgia assessments when she characterized that condition as a severe impairment and accounted for Plaintiff's 'chronic pain,' 'low energy,' and 'poor stamina' in her RFC assessment." PFRD, Doc. 24 at 16. n.7; *compare* AR at 538, 1693, 3037–38, *with* AR at 2392 (considering PA Dountas's opinion that Plaintiff has "poor stamina due to chronic pain and fatigue" and concluding that "fibromyalgia and poor stamina . . . affect[] her ability to interact with others, understand and use information, and maintain a consistent pace in a work setting"); AR at 2395 (observing that "[t]he overall record supports limitations with information, social interaction, concentration and persistence at work-related tasks, and managing daily activities due to a combination of depression, anxiety, PTSD, chronic pain, and fibromyalgia"); AR at 2396 (explaining that pain, poor stamina, and sleep disturbances are consistent with Plaintiff's diagnoses

and  acknowledging that they affect her concentration and task completion).  The Court agrees

with Judge Fouratt and overrules the objection.

Judge Fouratt also noted that the ALJ considered the following to determine whether PA

Dountas's opinions were supported in the record:

> And this is not all ALJ Fellabaum had to say about the supportability of PA
> Dountas's opinions.  She also noted that PA Dountas attributed some of her
> assessed limitations to Plaintiff's subjective reports, which the ALJ found not
> entirely consistent with other evidence of record. AR at 2386, 2392 (citing AR 1691
> (lifting and carrying limitations based on "subjective questioning – I don't do
> functional capacity testing"); *see also* AR 532 (responding to "What are the medical
> finding[s] supporting this opinion?" with "History from patient"); AR at 533
> (noting that Plaintiff is "claiming she can no longer perform normal work activity");
> AR at 2356 (noting that the assessed lifting and carrying limitations are "based on
> history [with] pt"). In another instance, the ALJ found that PA Dountas failed to
> support her opinions with information concerning the extent of Plaintiff's
> limitations or how her limitations would impact specific functional activities. *See*
> AR at 2390 (citing AR at 541). And the ALJ also indicated that PA Dountas failed
> to explain "why her opinions changed over time and what supports those changes."
> AR at 2394. In so concluding, the ALJ emphasized that PA Dountas described her
> August 2023 opinions (which amounted to less than sedentary work[4]) as Plaintiff's
> "baseline since 2015" [AR at 2393], even though her earlier opinions, particularly
> those in 2016 and 2021, assessed greater abilities in lifting, carrying, standing, and
> walking.[5] *Compare* AR at 3035, *with* AR at 532, 536, 2356. In sum, the ALJ offered
> good reasons for the weight she assigned to PA Dountas's opinions and her findings
> are supported by substantial evidence.

PFRD, Doc. 24 at 16-17. The Court agrees with Judge Fouratt and concludes that the ALJ

adequately considered the record in assigning weight to PA Dountas's opinion.

### C.    ALJ's conclusion that PA Dountas's opinions were inconsistent.

Plaintiff alleges that the ALJ erred by concluding that PA Dountas's opinions over time

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time . . . . [and] walking
and standing . . . occasionally." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[5] For instance, in 2016, PA Dountas assessed limitations in lifting and carrying of less than
20 pounds and standing and working at least 2 hours per workday [AR at 532, 536] and, similarly,
in 2021, she assessed lifting and carrying limitations of 20 pounds occasionally and standing and
walking for 2 hours per workday [AR at 2356].

were inconsistent, as any inconsistency could be reconciled by construing Plaintiff's conditions as worsening over time.  Mot., Doc. 15 at 9.

The Court agrees with Judge Fouratt that the inconsistencies in PA Dountas's opinions were a reasonable basis for the ALJ to discount her opinions. Judge Fouratt explained that:

> PA Dountas assessed limitations on lifting and carrying that vacillated between ten pounds in 2020, twenty pounds occasionally (and ten pounds frequently) in 2021, and five pounds occasionally (and less than five pounds frequently) in 2023, while at the same time describing the 2023 five-pounds-occasionally limitation as Plaintiff's "baseline" for lifting and carrying limitations "since 2015." *Id.* at 12 (citing AR at 532–34, 1691–93, 2356–57, 2394, 3035–36). The ALJ made the same observation, and she included it among the reasons for discounting the weight she afforded PA Dountas's opinions. *See* AR at 2394. Absent any explanation for the variations in assessed limitations, these inconsistencies constitute a reasonable basis for discounting PA Dountas's opinions, *see* 20 C.F.R. § 404.1527(c)(3)–(4), and one the Court can easily follow.

PFRD, Doc. 24 at 14.  Here, the ALJ could reasonably conclude that PA Dountas's opinions were inconsistent and did not merely describe a condition which grew worse over the years.

### D.    Certain objections raised for first time in response to PFRD will not be considered.

Plaintiff raised certain objections for the first time in response to the PFRD, and did not raise them in her Motion.  Doc. 15.  Generally, an "argument insufficiently raised in a party's opening brief . . . [is] deemed waived," *SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1226 (10th Cir. 2009). Moreover, issues raised for first time in objection to a magistrate judge's recommendation are deemed waived. *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("theories raised for the first time in objections to the magistrate judge's report are deemed waived."), *citing Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

Plaintiff asserts that the PFRD did not discuss that the ALJ ignored evidence supporting the opinion.  Obj., Doc. 25 at 6.  Plaintiff's objection does not point to which evidence the ALJ

ignored, and the magistrate judge's PFRD thoroughly addressed each issued raised by Plaintiff in her motion. Therefore, to the extent Plaintiff points to new evidence or arguments the ALJ ignored which she did not raise in her Motion (Doc. 15), such arguments are waived.

Moreover, as explained above, Plaintiff argued in her objection that the ALJ failed to conduct an adequate longitudinal medical review of the objective medical evidence in assessing Plaintiff's RFC. Obj., Doc. 25 at 7; PFRD, Doc. 24 at 13-14. This was not raised in the motion and is therefore waived. Mot., Doc. 15 at 11.

**E.    Conclusion**.

For all the reasons stated by Judge Fouratt in his thorough PFRD, the Court concludes that the ALJ complied with the mandate, adequately weighed PA Dountas's opinions pursuant to 20 C.F.R. §§ 404.1527 and 416.927, and adequately explained the weight given to those opinions.

**II.    The ALJ did not err in weighing Dr. Causey's prior administrative findings or in accounting for the moderate limitations she assessed**.

Plaintiff asserted that the ALJ did not adequately discuss Dr. Causey's opinion when she assigned that opinion weight.  More specifically, she suggests that in giving partial weight to Dr. Causey's prior administrative findings, the ALJ failed to address, or to incorporate into Plaintiff's RFC, Dr. Causey's assessed moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Mot., Doc. 15 at 13. The Court disagrees, as the ALJ's RFC was consistent with Dr. Causey's recommendation that Plaintiff should be limited to light or unskilled work.

As explained by Judge Fouratt, "Dr. Causey evaluated the record in May 2016 and indicated in her Mental Residual Functional Capacity Assessment ("MRFCA") that Plaintiff was moderately limited in areas of sustained concentration and persistence, to include the specific

18

ability highlighted by Plaintiff." PFRD, Doc. 24 at 18-19 (citing AR at 114). "Then, in the narrative portion of the same MRFCA, Dr. Causey found that Plaintiff could 'understand and remember short and simple instructions, locations, and work-like procedures,' that she could 'ask simple questions or request assistance,' that she could 'perform activities within a schedule, maintain regular attendance and make simple work-related decisions.'" PFRD, Doc. 24 at 19 (citing AR at 115). "Dr. Causey concluded that 'while… her current moderate limitations may preclude some work experiences, she maintains the ability to perform simple duties that can be learned on the job in a short period of time and involve things rather than people.'" *Id.* (citing AR at 115). Therefore, Dr. Causey expressly considered Plaintiff's moderate limitations but nevertheless concluded that she maintained the ability to perform light work. "Effectively, Dr. Causey determined that Plaintiff could perform unskilled work." *Id.,* citing 20 C.F.R. § 404.1568(a); 20 C.F.R. pt. 404, subpt. P., App., 2 § 202.00(g)). "In October 2016, another state agency psychologist, Dr. Ellen Gara, evaluated the record and affirmed Dr. Causey's findings. AR at 130–32." *Id.*

Judge Fouratt summarized the ALJ's decision as follows:

> The ALJ considered Drs. Causey and Gara's prior administrative findings collectively, giving them partial weight. AR at 2387–88. In doing so, she determined that the psychologists' MRFCA narratives did not adequately address the moderate limitations they assessed in social functioning. AR at 2388. The ALJ explained that she accounted for those moderate limitations by limiting Plaintiff to occasional interactions and no customer service work. *Id.* Otherwise, the ALJ determined that the psychologists' findings were generally consistent with the medical evidence throughout the relevant period, including Plaintiff's March 2016 consultative psychological evaluation, in which Plaintiff exhibited "delayed recall and had difficulty with serial sevens" but performed "OK on a digit span test and showed good fund of knowledge." *Id.* (citing AR at 489–93).

PFRD, Doc. 24 at 19. Moreover, the ALJ recited Dr. Causey's opinion that she had moderate limitations in maintaining concentration, persistence, and pace. AR at 2387-88. Finally, the ALJ's RFC was more restrictive in terms of pace than Dr. Causey's recommendation. PFRD, Doc. 24 at 22 n.11; *compare* AR at 2397, *with* AR at 115.

Plaintiff asserts that the ALJ's limitation to simple, routine tasks did not expressly or adequately account for a moderate limitation in the ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Judge Fouratt recommended that "the ALJ's RFCs adequately accounted for the moderate limitation that Dr. Causey assessed in completing a normal workday and workweek. The Court recommends that Plaintiff's motion be denied on this ground." PFRD, Doc. 24 at 22. The Court agrees and adopts Judge Fouratt's recommendation over Plaintiff's objection, as explained below.

Multiple Tenth Circuit cases have held that an ALJ adequately considers or incorporates a moderate limitation assessed by a physician where the ALJ incorporates how the claimant is limited in the ability to perform work-related activities, even where the ALJ does not expressly repeat the moderate limitations. In *Smith*, the Tenth Circuit held that a physician's MRFCA narrative that limited the plaintiff to work "limited in complexity" adequately accounted for a moderate limitation in completing a normal workday and workweek, despite failing to expressly repeat and analyze each moderate limitation. *Smith v. Colvin*, 821 F.3d 1264, 1268-69 (10th Cir. 2016). The ALJ's RFC, which limited the plaintiff to only simple, repetitive, and routine tasks, likewise incorporated the same moderate limitation. *Id*. ("The administrative law judges in *Lee* and in our case did not repeat the moderate limitations assessed by the doctor. But both administrative law judges incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities.").

Similarly, in *Lee v. Colvin,* a psychologist assessed moderate limitations in the claimant's ability to maintain attention and concentration, to accept instructions and respond appropriately to supervisors' criticism, and to get along with coworkers or peers without distracting them or

exhibiting behavioral extremes. 631 Fed.Appx. 538, 540-42 (10th Cir. 2015). The ALJ did not expressly incorporate these moderate limitations in the assessment of residual functional capacity. "Instead, the administrative law judge found that the claimant was limited to simple tasks and work requiring only routine supervision or only superficial interaction with supervisors and peers." *Id.* at 541–42. The Tenth Circuit concluded that the ALJ incorporated the moderate limitations in the course of assessing the claimant's residual capacity. *Id.*

Similarly, in *Chavez v. Colvin*, although "the ALJ didn't parrot Dr. Lev's exact descriptions of Ms. Chavez's limitations, the ALJ did specifically note his overall assessment that Ms. Chavez 'retain[ed] the capacity to do simple tasks.'" *Chavez v. Colvin*, 654 F. App'x 374, 375 (10th Cir. 2016).

Here, as in *Smith, Lee,* and *Chavez,* the ALJ clearly accounted for Plaintiff's moderate limitations by restricting her to simple, routine tasks and work decisions, with no fast-paced assembly line work that is performed in the same location every day, and with only occasional social interaction and no customer service work, such as light work or unskilled labor. AR at 2383. By restricting her to these simple tasks, the ALJ necessarily accounted for the moderate limitation.

Finally, Plaintiff asserts that Dr. Causey failed to explain "why she excluded limitations in keeping pace and requiring rest periods" in the narrative portion of her MRFCA. Doc. 15 at 13. The Tenth Circuit has concluded that "challenges to whether an ALJ assessment of residual functional capacity incorporate limitations in section I ask 'the wrong question.... We compare the administrative law judge's findings to [Dr. Turner's] opinion on residual functional capacity, not [his] notations of moderate limitations.'" *Fannin v. Comm'r, SSA*, No. 20-7027, 2021 WL 2071076 (10th Cir. May 24, 2021), *quoting in part Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016). Moreover, "*Smith v. Colvin* establishes that an ALJ's RFC which limits a claimant to simple,

repetitive, and routine tasks accounts adequately for a moderate limitation in completing a normal workday and workweek. Magistrate Judge Fouratt's approach applies this binding precedent faithfully." *Bernadette S. v. Dudek*, No. CIV 24-0124 JB/GJF, 2025 WL 892944, at *5 (D.N.M. Mar. 24, 2025).

Here, in her narrative Dr. Causey noted that the Plaintiff "seems to maintain the ability to perform activities within a schedule, maintain regular attendance and make simple work-related decisions." AR 115. Dr. Causey concluded that "while… *her current moderate limitations* may preclude some work experiences, she maintains the ability to perform simple duties that can be learned on the job in a short period of time and involve things rather than people." AR 115 (emphasis added). Therefore, Dr. Causey's narrative expressly discussed her moderate limitations. Moreover, Dr. Causey clearly accounted for Plaintiff's moderate limitations in her opinion on residual functional capacity by limiting her to simple duties that can be learned on the job in a short period of time and involving things rather than people. *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016).

Plaintiff cites to an unpublished case, *Carver v. Colvin*, 600 F. App'x 616 (10th Cir. 2015) for the proposition that an opining physician must expressly discuss each moderate limitations in the narrative portion of their opinion. That case was decided before the published Tenth Circuit case *Smith v. Colvin,* and to the extent it conflicts with *Smith v. Colvin,* it need not be followed. Although Plaintiff cites to a variety of district court cases and out of circuit cases, none of those can or have overruled *Smith v. Colvin*. Alternatively, as explained above, both the opining physician and the ALJ adequately accounted for the moderate limitations in the RFC opinion.

Thus, the Court overrules Plaintiff's objections to Judge Fouratt's recommendation regarding Dr. Causey's opinions, and adopts Judge Fouratt's PFRD. *See* Doc. 24 at 18-22.

**III.    The ALJ properly weighed the opinion of consultative psychological examiner Dr.
Emery**.

Plaintiff asserts that the ALJ failed to properly weigh the opinion of her consultative
psychological examiner, Michael P. Emery, Ph.D. Doc. 15 at 17–20.  Dr. Emery opined that
Plaintiff had marked limitations in social functioning and adaptation, and Plaintiff argues that the
ALJ erred in affording those opinions little weight.  *Id.*  She alleges that the ALJ failed to consider
evidence in support of Dr. Emery's opinion. *Id.* at 20. Moreover, she asserts that the ALJ did not
provide citations to specific evidence to support her findings, and therefore her RFC assessment is
not supported by substantial evidence. *Id.* at 21.

Judge Fouratt recommended that the Court deny Plaintiff's claim of error and find that the
ALJ properly weighed Dr. Emery's opinion.  PFRD, Doc. 24 at 22-28. The Court agrees.  The
Court adopts Judge Fouratt's reasoning and analysis in full, and incorporates it herein. *Id.*  The
Court briefly addresses Plaintiff's arguments below.

*First*, the ALJ adequately cited to the record in support of her decision to afford Dr.
Emery's opinion little weight. The ALJ recited the evidence she relied upon in her analysis of Dr.
Emery's opinion.  However, as explained by Judge Fouratt, Plaintiff is correct that the ALJ did not
cite to specific parts of the record in her analysis of Dr. Emery's opinions.  "But elsewhere in her
analysis of opinion evidence, the ALJ included *ample* citations to the record for these same
findings:

> multiple notes show[] that the claimant is alert and oriented (1F/40, 56, 72; 11F/14;
> 12F/16; 13F/5; 20F/31, 62; 25F/22, 54; 26F/13, 19; 27F/2; 28F/3; 29F/12; 32F/13,
> 19, 28, 30, 51, 55; 33F/7, 15, 41, 74, 92; 40F/7, 11; 41F/17, 34; 43F/11, 19, 24;
> 44F/3) with ability to respond to questions (33F/92; 47F/94). Her insight and
> judgment appear intact or appropriate (11F/5, 8; 12F/5; 29F/4; 32F/5, 45; 47F/49).
> She is an accurate historian (38F/7). Some notes say that her cognitive abilities do
> not appear impaired (6F/2, 8, 14, 20, 28; 13F/4, 6; 37F/11, 15), and she shows
> normal or intact memory, attention, and concentration (13F/2, 5, 6, 7; 47F/27;
> 47F/30, 49, 53, 57, 65, 69, 73). . . . Other times she presents normal or appropriate

> mood and affect (11F/5, 8, 14, 17; 12F/5, 8, 16, 19; 29F/4, 8), being interactive (26F/15,1 7, 19, 21; 40F/7, 9, 11, 13, 15), pleasant (1F/44, 88, 93, 103; 22F/1; 24F/39, 61; 25F/15, 43, 54; 32F/4, 14, 27, 44; 33F/29; 36F/3) and cooperative (27F/2; 28F/4; 29F/12; 32F/14, 20, 26, 31, 55; 36F/3, 9; 39F/13; 47F/25, 30, 49, 53, 57, 61, 65, 69, 73; 49F/28, 34).
>
> AR at 2395–96. And separately, the ALJ observed Dr. Baum's reports that Plaintiff was alert, oriented, and behaviorally appropriate [AR at 2391 (citing AR at 1602–13)] and Dr. Emery's own findings that she was alert, oriented and engaged [AR at 2387 (citing AR at 489–91)].

PFRD, Doc. 24 at 25.

If the Court were to read the ALJ's decision as a whole, the ALJ provided ample citations to support her findings. In *Wall*, the Tenth Circuit acknowledged that an ALJ "must sufficiently explain the reasons for [her] rulings," but warned that if the court determines "based on a reading of the ALJ's decision as a whole," that "remand would serve no other purpose than to needlessly prolong a protracted course of proceedings," it should not remand. *Wall*, 561 F.3d at 1069 (citing *Fisher-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005)). Furthermore, as explained by Judge Fouratt:

> Two unpublished Tenth Circuit opinions support application of *Wall's* "record as a whole" doctrine to the present case. First, in in *Webb v. Commissioner, SSA*, 750 F. App'x 718 (10th Cir. 2018), the plaintiff challenged the ALJ's analysis of the treating physician's opinion in which he included a "general reference to medical records 'all discussed above.'" *Id*. at 721. Because it was "not difficult to determine what inconsistencies the ALJ relied upon," the Tenth Circuit was satisfied that the ALJ applied the correct legal standards such that "merely technical omissions in [his] reasoning d[id] not dictate reversal." *Id*. (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court explained that "relying on . . . other medical opinions, which [were] all discussed earlier in the decision (and thus [were] apparent from the ALJ's decision itself), d[id] not constitute an impermissible post hoc justification" for the ALJ's findings. *Id*. Similarly, in *Endriss v. Astrue*, 506 F. App'x 772 (10th Cir. 2012), the Tenth Circuit observed that "[t]he ALJ set forth a summary of the relevant objective medical evidence earlier in his decision[,] and he [was] not required to continue to recite the same evidence again in rejecting [a medical source's] opinion." *Id*. at 777. Because the ALJ's discussion of the opinion made clear the weight the ALJ gave the opinion and the reasons therefor, the court found no reversible error. *Id*.

Here, the ALJ's finding of inconsistency between Dr. Emery's moderate social limitations and other record evidence is likewise capable of meaningful review and supported by extensive record citations provided throughout her RFC assessments. The ALJ was clear that she found Dr. Emery's marked limitations in social functioning and adaptation inconsistent with medical evidence indicating that Plaintiff was "alert, oriented, and cooperative," with "normal or intact memory, attention, and concentration." AR at 2389. That the ALJ did not *also* supply record citations to the evidence she referenced in the paragraphs comprising her discussion of Dr. Emery's opinion, having done so elsewhere in her decision, was not reversible error. In other words, Plaintiff's attempts to discount the Tenth Circuit's instruction to consider an ALJ's decision as a whole are unavailing.

PFRD, Doc. 24 at 26-27. The Court agrees with this analysis, adopts it in full, and concludes that, when reading the ALJ's decision as a whole, the ALJ provided ample citations to the record.

Plaintiff objects, asserting that some of the citations by the ALJ to the record come *after* the discussion of Dr. Emery's opinion. In her analysis the ALJ referred to evidence that Plaintiff was alert, orientated, and cooperative with normal or intact memory, attention and concentration. AR at 2389. The ALJ provided citations to this evidence later. AR at 2395-96. The Court does not find this argument persuasive given the extensive record the ALJ was required to sift through. Moreover, it would not make sense to require the ALJ to repeatedly cite to same evidence multiple times in the opinion. Finally, the Court is not providing its own *post-hoc* rationale or citations. Rather, the ALJ pointed to the relevant evidence and provided citations to that evidence.

*Second*, Plaintiff asserts that the ALJ erred in relying on certain "mental status findings" by various doctors as inconsistent with Dr. Emery's finding of marked limitations with social function and adaptation. Mot., Doc. 15 at 17. The ALJ found that "[r]egarding the marked limits with social functioning and adaptation, these are not entirely consistent with the medical evidence showing a claimant who is alert, oriented, and cooperative. Several notes also show normal or intact memory, attention, and concentration. This is not consistent with marked limitations." AR at 2389. As quoted above, the ALJ cited to numerous instances, over multiple visits, where doctors

made these mental status findings.  AR at 2387, 2391, 2395-96.

> Moreover, as explained by Judge Fouratt:

> For this proposition, [Plaintiff] relies on a decision from Judge Sweazea: *Casas v. Saul*, No. 1:19-cv-1154-KRS, 2021 WL 107244 (D.N.M. Jan. 12, 2021). ECF 15 at 17. In *Casas*, Judge Sweazea observed, as a general matter, that mental status examinations "document a clinician's observations of the patient *at a particular point in time*." 2021 WL 107244, at *5 (quoting *McGehee v. Saul*, No. 18-cv-1164 KK, 2019 WL 6219507, at *6 (D.N.M. Nov. 21, 2019)) (emphasis added). Acknowledging that it is "entirely proper for an ALJ to consider [such] findings when evaluating the supportability of a medical opinion concerning a claimant's overall mental functioning and limitations," Judge Sweazea observed that "such findings are not necessarily dispositive to this analysis." *Id*. (citations omitted). Judge Sweazea went on to find that the ALJ in *Casas* erred both in her mischaracterization of the consultative examiner's mental status examination findings and in her failure to elaborate on how those findings were inconsistent with the examiner's assessed limitations. *Id*.

> Unlike in *Casas*, the ALJ here did not mischaracterize Dr. Emery's mental status examination findings, nor did she find only Dr. Emery's findings inconsistent with his marked limitations. Rather, in finding Dr. Emery's marked limitations inconsistent "with the medical evidence showing [Plaintiff was] alert, oriented, and cooperative" and with "normal or intact memory, attention, and concentration," the ALJ was referring to the findings of *multiple* providers at *various points in time*, findings she discussed and cited throughout her decision. *See, e.g.,* AR at 2395–96 (citing numerous records). Contrary to Plaintiff's position, the ALJ's consideration of normal mental status examination findings by other providers (and by Dr. Emery) when weighing Dr. Emery's opinions was not improper, and these findings constitute substantial evidence supporting the ALJ's consistency analysis.

PFRD, Doc. 24 at 27-28. The Court agrees with Judge Fouratt and adopts this reasoning in full.

The ALJ's consideration of normal mental status examination findings by multiple providers over

multiple examinations was not improper.

> *Finally*, Plaintiff points to portions of the record which she asserts "*supports* Dr. Emery's

marked limitation in social functioning and adaptation." Doc. 15 at 18–20.  "In this regard, she

discusses the findings of other medical sources, to all of which the ALJ gave either partial or

little/limited weight for various reasons." PFRD, Doc. 24 at 28; *Compare* Doc. 15 at 18-20.

(discussing findings from PA Dountas, LPCC Mohammad Zabihi, Dr. Steven Baum, LPCC

Luscha Weeks), *with* AR at 2389–96.

Judge Fouratt concluded that Plaintiff's argument was an invitation to reweigh the evidence, "an activity in which the Court will not engage". PFRD, Doc. 24 at 28 (*citing Newbold v. Colvin,* 718 F.3d 1257, 1262 (10th Cir. 2013) ("In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency.")); *Oldham*, 509 F.3d at 1257 (a court is to "review only the sufficiency of the evidence, not its weight"). "Although Plaintiff's arguments may raise the possibility of drawing a different conclusion from the evidence, the Court is satisfied that the ALJ gave good reasons supported by substantial evidence for rejecting Dr. Emery's marked limitations in social functioning and adaptation and for favoring *moderate* limitations in those areas of functioning, for which she accounted in her RFCs." PFRD, Doc. 24 at 28, *citing* AR at 2383 (limiting Plaintiff to "occasionally interact[ing] with coworkers, supervisors and the general public, with no customer service work" and to work "performed in the same location ever day"), 2397 (same). Judge Fouratt recommended that the Plaintiff's motion be denied on this ground. *Id.* The Court agrees with Judge Fouratt and adopts the recommendation over Plaintiff's objection.

## IV.    The ALJ did not err in her analysis of Plaintiff's subjective complaints, and her RFCs are based on substantial evidence.

In her final claim of error, Plaintiff contends that the ALJ's two RFCs are not based on substantial evidence because, contrary to *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), SSR 96-8p, and SSR 16-3p, the ALJ impermissibly excluded Plaintiff's complaints of fibromyalgia, back pain, neuropathy, and somatic symptom disorder from her subjective allegations analysis. Doc. 15 at 21–22.

*First*, as explained by Judge Fouratt, the ALJ extensively discussed Plaintiff's complaints of fibromyalgia, back pain, neuropathy, and somatic symptoms disorder in her subjective

complaints analysis. *See* PFRD, Doc. 24 at 30-33. In her objection, Plaintiff alleges that the ALJ's failure to address the third prong of the *Luna* standard is reversible error. Obj., Doc. 25 at 21. Plaintiff asserts that none of the evidence adequately links her subjective complaints regarding her impairments of fibromyalgia, neuropathy, or somatic symptoms disorder. *Id.* The Court fully incorporates Judge Fouratt's PFRD and overrules Plaintiff's objection.

"A disability claimant's complaints of disabling pain are evaluated using the three-step analysis set out in *Luna v. Bowen,* 834 F.2d 161 (10th Cir.1987). Under *Luna* an ALJ faced with a claim of disabling pain is required to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166–67 (10th Cir. 2012).

"But so long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility,' he need not make a 'formalistic factor-by-factor recitation of the evidence. Again, common sense, not technical perfection, is our guide.'" *Keyes-Zachary*, 695 F.3d at 1167 (quoting in part *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000)). "Thus, we see no error in the mere absence of a rote recitation of the *Luna* factors." *Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 795–96 (10th Cir. 2013).

The *Luna* factors overlap in part with SSR 16-3p. As explained by Judge Fouratt, SSR 16-3p defines the two-step process an ALJ must use when evaluating a claimant's symptoms, *see* SSR 16-3p, 2017 WL 5180304 (2017). At the first step, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce [the] individual's symptoms such as pain." *Id*. at *3. At the second step, after

the ALJ has found such an impairment, she "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities . . . ." *Id.* "The ALJ considers the record evidence, the claimant's statements, the medical and non-medical source statements, and non-exhaustive factors…" PFRD, Doc. 24 at 29-30. An ALJ's symptom evaluations "warrant particular deference." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001).

As explained in detail by Judge Fouratt, the ALJ extensively discussed Plaintiff's subjective symptom testimony and other subjective reports "including those relate to fibromyalgia, back pain, and neuropathy." PFRD, Doc. 24 at 30 (citing AR at 2384-86). Moreover, the ALJ concluded that "[a]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning *the intensity, persistence and limiting effects* of these symptoms are not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in this decision*. As for the claimant's statements about the *intensity, persistence, and limiting effects* of his or her symptoms, they are inconsistent because the record does not support them." AR at 2386 (emphasis added). "The ALJ's RFC assessments offered various rationales for discounting Plaintiff's subjective complaints of disabling pain and somatic symptoms, and she discussed many of the factors enumerated in SSR 16-3p." PFRD, Doc. 24 at 31 (citing AR at 2386–99). The ALJ pointed to her ability to live her daily life, the objective medical evidence and normal findings, and certain treatments and medication. AR at 2383-98. After extensively discussing the relevant subjective and objective medical evidence, the ALJ concluded that Plaintiff was not disabled. Thus, she clearly addressed the third prong of the *Luna* analysis.

Next, Plaintiff alleges that the ALJ erred in relying upon her ability to complete daily activities. She asserts that completing daily activities does not mean she can engage in substantial gainful activity. But the ALJ did not rely solely on the ability to complete daily activities or household tasks. Rather, the ALJ pointed to objective medical evidence as well as normal physical findings in multiple examinations in the context of discussing her fibromyalgia, back pain, and neuropathy. PFRD, Doc. 24 at 31; AR at 2392 (noting, in the context of her discussion of Plaintiff's fibromyalgia, that "clinical observations regarding [Plaintiff's] ability to ambulate unassisted and having normal gait, sensation, strength and coordination are inconsistent with a patient who can only stand and walk for less than two hours in an eight-hour workday"). The same is true with respect to Plaintiff's peripheral neuropathy and back or spine impairments. *See* AR 2389–92 (peripheral neuropathy and back or spine impairments). Moreover, the ALJ pointed to Plaintiff's treatments or medication. *See* PFRD, Doc. 24 at 32. Therefore, the Court overrules Plaintiff's objection.

Plaintiff also asserts that the ALJ erred by failing to discuss her somatic disorder during the subjective complaints analysis. The Court disagrees. As explained by Judge Fouratt, the ALJ discussed Plaintiff's somatic disorder and concluded that it was a severe impairment. PFRD, Doc. 24 at 33, *citing* AR at 2379, 2382, 2386 (citing AR at 1690–93). Furthermore, the ALJ

> also acknowledged that during psychological evaluations conducted by Steven Baum, Ph.D in 2019 and 2023, testing indicated "somatic concerns." AR at 2391, 2394, 2397, 2399. Although the ALJ did not explicitly discuss Listing 12.07, her step-two analysis otherwise rated Plaintiff's functioning in the *same four areas* outlined for somatic symptoms and disorder. *Compare* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.07(B), *with* 2381–82. And as the Commissioner points out, the ALJ discussed much of the same evidence that Plaintiff highlights to support her argument that the ALJ's consideration of her somatic symptoms were inadequate. *Compare* AR 2386–87, 2391, 2394, *with* ECF 15 at 24–26.

> The Court is ultimately not persuaded that the ALJ's discussion and findings with respect to Plaintiff's somatic symptoms constitute reversible error. More generally,

the Court agrees with the Commissioner that Plaintiff's routinely normal examination findings, as thoroughly detailed by the ALJ with citations to the record, constitute substantial evidence supporting her finding as to Plaintiff's subjective complaints of disabling symptoms and limitations. *See Megginson v. Bowen*, 489 F. App'x 260, 263 (10th Cir. 2012).

PFRD, Doc. 24 at 33. The Court overrules Plaintiff's objection.

Finally, the Court notes that Plaintiff's objection appears to go beyond the claims of error raised in her motion. *Compare* Mot., Doc. 15 at 21-26 *with* Obj., Doc. 25 at 20-25. Plaintiff asserted in the Motion that the ALJ failed to adequately discuss Plaintiff's fibromyalgia, back pain, neuropathy, and somatic symptoms, and whether, in combination with her other symptoms and the medical evidence they were disabling. Mot., Doc. 15 at 26-27. To the extent Plaintiff's objections go beyond the grounds for error in the motion, the Court does not consider them. Alternatively, for the reasons stated in the PFRD, they are overruled.

## CONCLUSION

For the reasons stated above and in Judge Fouratt's PFRD, Plaintiff's objections are overruled, the PFRD is adopted and incorporated herein, and Plaintiff's Motion to Reverse and Remand to Agency is denied.

**IT IS THEREFORE ORDERED AS FOLLOWS:**

(1) Plaintiff's objections (Doc. 25) are **OVERRULED**;

(2) The Magistrate Judge's PFRD (Doc. 24) is **ADOPTED**;

(3) Plaintiff's Motion to Reverse and Remand to Agency (Doc. 15) is **DENIED**; and

(4) The case is **DISMISSED WITH PREJUDICE**.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE